[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-10743

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 3, 2012
JOHN LEY
CLERK

D.C. Docket No. 3:06-cr-00041-CAR-CHW-21

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

JUANITA DAVENPORT,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(February 3, 2012)

Before HULL, MARCUS and BLACK, Circuit Judges.

BLACK, Circuit Judge:

Juanita Davenport appeals from a final order of criminal forfeiture concerning $214,980.00 in U.S. currency seized from a safe deposit box. Davenport challenges (1) the district court's denial of her motion to vacate the preliminary order of forfeiture (POF) issued against her former codefendant, Orlando Muckle, with regard to the currency; (2) the dismissal of her ancillary petition to the property under 21 U.S.C. § 853(n) for its untimeliness; and (3) the denial of her subsequent request for relief under Federal Rule of Civil Procedure 60(b)(1) based on excusable neglect. We dismiss in part and affirm in part.

## I. BACKGROUND

Davenport, Muckle, and numerous other named defendants were charged in a second superseding indictment with conspiring to possess with intent to distribute various controlled substances, in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count One). Davenport was further charged with making a false statement to a federally deputized agent regarding the contents of a safe deposit box, in violation of 18 U.S.C. § 1001(a)(3) (Count Three). The indictment also sought forfeiture of the defendants' interest in any property derived from, or used to facilitate the commission of, the drug conspiracy, pursuant to 21 U.S.C. § 853 (Count Six).

On February 26, 2008, Davenport, represented by attorney Xavier Dicks, pled guilty to Count Three of the indictment, making a false statement to a federally deputized agent. The Government dismissed the remaining counts against Davenport, including the forfeiture count. On May 27, 2008, Davenport was sentenced to three years' probation and was ordered to pay a $2,500 fine.

On February 3, 2009, Muckle pled guilty to a superseding information, which alleged in Count One that he conspired to distribute more than 400 grams of cocaine. Count Two contained a forfeiture provision requiring him to forfeit his interest in the $214,980.00 in U.S. currency found in Davenport's safe deposit box.[1] Under the terms of his written plea agreement, Muckle agreed to forfeit any right or interest he had in property subject to forfeiture, including the currency seized from the safe deposit box, as well as to the entry of a POF regarding his interests, if any, in those assets. Nevertheless, prior to accepting the plea, Muckle struck various portions of the written plea agreement that asserted the currency represented proceeds he received from distributing cocaine. At his plea hearing, Muckle also denied having any interest in the subject currency.

---

[1] Although not pertinent to this appeal, Count Two also sought the forfeiture of two vehicles.

On February 5, 2009, the Government moved the district court pursuant to Federal Rule of Criminal Procedure 32.2(b) for a POF. The court granted the motion on March 16, 2009. The order authorized the Attorney General to notify persons allegedly having an interest in the property of their right to petition the court, pursuant to 21 U.S.C. § 853(n), for a hearing to adjudicate the validity of such interest. The next day, March 17, the Government filed with the court a notice of its intention to dispose of the forfeited property. The notice further provided that persons claiming an interest in the forfeited currency had within 30 days of receiving actual notice or no later than 60 days from the first day of the Government's publication of the notice on its website[2] to petition the court to adjudicate such interest.[3] Also on March 17, the Government served copies of the

---

[2] The website was the United States Department of Justice's official government forfeiture website, *www.forfeiture.gov.*

[3] 21 U.S.C. § 853(n), Third party interests, states, in pertinent part:
(1) Following the entry of an order of forfeiture under this section, the United States shall publish notice of the order and of its intent to dispose of the property in such manner as the Attorney General may direct. The Government may also, to the extent practicable, provide direct written notice to any person known to have alleged an interest in the property that is the subject of the order of forfeiture as a substitute for published notice as to those persons so notified.
(2) Any person, other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States pursuant to this section may, within thirty days of the final publication of notice or his receipt of notice under paragraph (1), whichever is earlier, petition the court for a hearing to adjudicate the validity of his alleged interest in the property. The hearing shall be held before the court alone, without a jury.

4

POF and the notice of forfeiture on Davenport's attorney, Dicks, because the Government considered Davenport a potential claimant.

The POF and notice of forfeiture were confirmed delivered to Dicks' office on March 19; Davenport therefore had until April 20, 2009,[4] to petition the court pursuant to § 853(n). Shortly after receiving the notice, Dicks contacted the Government, indicating he had already filed a claim for Davenport and was confused as to why he needed to file another one. The Government informed Dicks that the previously filed claim was for the administrative forfeiture action and that Davenport would still need to file a petition in the criminal action in accordance with the instructions in the POF and notice of forfeiture. On May 12, 2009, Davenport, through Dicks, petitioned the district court to adjudicate her interest in the forfeited currency.[5] She asserted that the money belonged to her and that it represented her life savings and the proceeds of the sale of her primary residence.

On July 21, 2009, the Government moved the court to dismiss Davenport's petition as untimely. On November 5, 2009, Davenport terminated Dicks as her

---

[4] The final day fell on Saturday, April 18, 2009. Thus, the claim was due to be filed no later than Monday, April 20, 2009.

[5] On April 22, 2009, Muckle was sentenced to a term of imprisonment, and the forfeiture was included in his judgment.

attorney. Davenport then retained new counsel and filed a response to the Government's motion. Her response challenged the forfeiture on several grounds and requested that the court grant her relief under Federal Rule of Civil Procedure 60(b) if it found her petition untimely.

The district court granted the Government's motion to dismiss on April 28, 2010.[6] On January 24, 2011, the court entered a final order of forfeiture, forfeiting to the United States the $214,980.00 in full. Davenport now appeals the order and the court's refusal to grant her Rule 60(b) relief.

## II. DISCUSSION

### A. Davenport's Standing to Challenge the POF

"Article III of the Constitution limits the jurisdiction of federal courts to 'cases' and 'controversies.'" *Christian Coal. of Fla., Inc. v. United States*, 662 F.3d 1182, 1189 (11th Cir. 2011) (quotation omitted). "[T]here are three strands of justiciability doctrine–standing, ripeness, and mootness–that go to the heart of the Article III case or controversy requirement." *Id.* (quotation omitted). Our jurisdiction is dependent on whether Davenport has standing to challenge the POF entered against Muckle. The issue of whether a former codefendant has standing

---

[6] The court granted the motion initially on March 4, 2010. Davenport moved the court for reconsideration. The court denied her motion on April 28, 2010, in an amended order.

6

to challenge a POF entered against another defendant is one of first impression in this Circuit.

"We review *de novo* questions about our subject matter jurisdiction, including standing." *United States v. Cone*, 627 F.3d 1356, 1358 (11th Cir. 2010). Moreover, we review "a district court's legal conclusions regarding third-party claims to criminally forfeited property *de novo* and its factual findings for clear error." *United States v. Marion*, 562 F.3d 1330, 1335 (11th Cir. 2009).

Initially, it is necessary to explain the difference between criminal and ancillary forfeiture proceedings. Criminal forfeiture proceedings are governed by 21 U.S.C. § 853 and Federal Rule of Criminal Procedure 32.2. Pursuant to § 853, any person convicted of certain felony drug offenses must forfeit any property derived from the violation.[7] 21 U.S.C. § 853(a). If a defendant is convicted of any count upon which criminal forfeiture is sought, the court must, as soon as practical, determine whether the property is subject to forfeiture. Fed. R. Crim. P. 32.2(b)(1).[8] Where the Government seeks forfeiture of specific property, the court must determine whether the Government established the requisite nexus between

---

[7] Because Davenport pled guilty to making a false statement to a federally deputized agent, and not a drug offense, the Government could not proceed with criminal forfeiture against Davenport under 21 U.S.C. § 853.

[8] Unless otherwise indicated, all citations to Rule 32.2 refer to the version in effect at the time the district court issued the POF underlying this appeal. *See* Fed. R. Crim. P. 32.2 (2009).

the property and the offense of conviction. *Id.* Once this determination has been made, the court must promptly enter a POF without regard to any third party's interest in the property. Fed. R. Crim. P. 32.2(b)(2). The entry of a POF authorizes the Attorney General to seize the specific property subject to forfeiture and to commence ancillary proceedings regarding third-party rights. Fed. R. Crim. P. 32.2(b)(3), (c); *see also United States v. Petrie*, 302 F.3d 1280, 1284 (11th Cir. 2002).

After entering a POF, the court can determine whether any third parties have an interest in the forfeited property, but only if they file a timely petition in an ancillary proceeding. *See Marion*, 562 F.3d at 1336-37. At the conclusion of the ancillary proceeding, the court "must enter a final order of forfeiture by amending the preliminary order as necessary to account for any third-party rights." Fed. R. Crim. P. 32.2(c)(2). If, however, no third party files a timely petition, "the [POF] becomes the final order of forfeiture if the court finds that the defendant . . . had an interest in the property that is forfeitable under the applicable statute." *Id.* Once the final order of forfeiture has been entered, neither the defendant nor a third party may object on the ground that a codefendant or a third party had an interest in the property. *Id.*

An ancillary proceeding constitutes the sole means by which a third-party claimant can establish entitlement to return of forfeited property. *See* 21 U.S.C. § 853(n)(2); *Libretti v. United States*, 516 U.S. 29, 44, 116 S. Ct. 356, 365 (1995) ("[T]hird-party claimants can establish their entitlement to return of the [forfeited] assets only by means of the hearing afforded under 21 U.S.C. § 853(n)."). In fact, § 853 affirmatively bars third-party claimants from intervening in a trial or appeal of a criminal case involving the forfeiture of the subject property, as well as commencing an action against the Government concerning the validity of an alleged interest in the property. 21 U.S.C. § 853(k). These provisions confer limited rights on third-party petitioners "to participate only in the ancillary forfeiture proceeding, not in the criminal case." *Cone*, 627 F.3d at 1358. A codefendant in a criminal case is properly viewed as a third party with regard to another defendant's forfeiture of property. *United States v. Gilbert*, 244 F.3d 888, 910 n.54 (11th Cir. 2001), *superseded on other grounds as recognized in Marion*, 562 F.3d at 1341.

The Advisory Committee Notes to the 2000 adoption of Rule 32.2 state the ancillary proceeding for third-party claimants "does not involve relitigation of the forfeitability of the property," which has already been ordered in the criminal case. The ancillary proceeding is only for the purpose of determining "whether any third

party has a legal interest in the forfeited property." Fed. R. Crim. P. 32.2, advisory committee's note (2000 Adoption).[9] Consistent with the Advisory Committee Notes, at least three of our sister circuits have concluded that third parties, including former codefendants, cannot challenge or relitigate a preliminary order's finding of forfeitability. *See United States v. Andrews*, 530 F.3d 1232, 1236-37 (10th Cir. 2008) (holding the victims of a defendant's misconduct, as third parties, had no right to challenge a preliminary order's finding of forfeitability, but could only seek amendment of the order to exclude their interest in an ancillary proceeding); *United States v. Porchay*, 533 F.3d 704, 707, 710 (8th Cir. 2008) (holding a former codefendant, as a third party, could not relitigate the validity of a forfeitability determination made against another defendant); *DSI Assoc. LLC v. United States*, 496 F.3d 175, 184-85 (2d Cir. 2007) (holding a third party could not intervene by challenging the underlying validity of the forfeiture order rather than filing an ancillary proceeding). As the Tenth Circuit explained in *Andrews*, if the forfeited property really belongs to the third party, she can prevail and recover her property during the ancillary proceeding "whether there were defects in the criminal trial or the forfeiture process or not; and if the property does not belong to

---

[9] "Although not binding, the interpretations in the Advisory Committee Notes are nearly universally accorded great weight in interpreting federal rules." *Horenkamp v. Van Winkle & Co., Inc.*, 402 F.3d 1129, 1132 (11th Cir. 2005) (quotation omitted).

10

the third party, such defects in the finding of forfeitability are no concern of [hers]." 530 F.3d at 1237 (quotation omitted).

We conclude that Davenport lacked standing to challenge the validity of the POF's determination of forfeitability. Her sole mechanism for vindicating her purported interest in the forfeited currency was within the context of the ancillary proceeding prescribed by § 853(n) and Rule 32.2(c). Whether or not she availed herself of this opportunity by filing a timely third-party petition does not affect the conclusion that third parties, including codefendants, may not relitigate the merits of a forfeitability determination. The district court did not err in finding that Davenport lacked standing to challenge the validity of the POF. Therefore, we lack jurisdiction over this claim.

## B. Untimeliness of Ancillary Petition

Although Davenport lacks standing to challenge Muckle's POF, we may still review the district court's dismissal of her own ancillary petition. Davenport contends the district court erred in dismissing her ancillary petition to the forfeited currency as untimely based on the date Dicks received a written notice of forfeiture. She argues that § 853(n)(1) and due process both require that direct written notice be served on a known and accessible party with an interest in forfeited property, and that the written notice of forfeiture sent to her attorney was

11

insufficient because he no longer represented her in the criminal proceeding. Consequently, she maintains that her petition was subject to a later filing deadline based on the notice of forfeiture published on the Government's official website, thereby rendering her petition timely.

Davenport also argues that, although Rule 32.2(b) was amended in December 2009 to incorporate the notice provisions of Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (Forfeiture Action Rules), retroactive application of Rule G to validate the notice sent to her attorney would violate her procedural due process rights, as Rule G previously applied only to civil forfeiture actions, not criminal forfeiture proceedings. Alternatively, she maintains that, even if the notice mailed to her attorney was legally effective, the district court was required to construe the ambiguous deadline set forth in the notice in her favor, and should have recognized her timely claim in the administrative forfeiture proceeding against the currency as a timely claim in the criminal forfeiture action.

Section 853(n) provides that, following the entry of a POF, the Government "shall publish notice of the order and of its intent to dispose of the property," and "may also, to the extent practicable, provide direct written notice to any person known to have alleged an interest in the property." 21 U.S.C. § 853(n)(1). The

12

criminal forfeiture statute also requires third-party claimants to file a petition "within thirty days of the final publication of notice or his receipt of [direct written] notice . . . , whichever is earlier." 21 U.S.C. § 853(n)(2). If a third party fails to file a petition within the prescribed 30-day deadline, her interests in the property are forfeited. *Marion*, 562 F.3d at 1336-37, 1341.

The phrase "direct written notice" is not defined in the criminal forfeiture statute. *See* 21 U.S.C. § 853. Likewise, at the time the POF was entered in this case, Rule 32.2 did not explicitly address what type of notice, if any, the Government was required to give to potential third-party claimants. *See* Fed. R. Crim. P. 32.2. Effective December 1, 2009, however, Rule 32.2 was amended to provide that the Government "must publish notice of the [forfeiture] order and send notice to any person who reasonably appears to be a potential claimant with standing to contest the forfeiture in the ancillary proceeding." Fed. R. Crim. P. 32.2(b)(6)(A) (2010). The amended rule also explicitly incorporated the notice provisions of Rule G(4) of the Forfeiture Action Rules, stating that the direct notice of a POF "may be sent in accordance with Supplemental Rules G(4)(b)(iii)-(v)." Fed. R. Crim. P. 32.2(b)(6)(D) (2010). Rule G, which has otherwise governed civil forfeiture actions since 2006, provides that direct notice "must be sent by means reasonably calculated to reach the potential claimant," including by

13

sending notice "to the potential claimant or to the attorney representing the potential claimant with respect to the seizure of the property or in a related investigation, administrative forfeiture proceeding, or criminal case." Forfeiture Action Rule G(4)(b)(iii)(A)-(B), advisory committee's note (2006 Adoption).

Nevertheless, even prior to the amendment of Rule 32.2, the Advisory Committee Notes accompanying its initial adoption acknowledged that "[t]he notice provisions regarding the ancillary proceeding are equivalent to the notice provisions that govern civil forfeitures." Fed. R. Crim. P. 32.2, advisory committee's note (2000 Adoption). That approach was consistent with the well-established principle that ancillary proceedings to a criminal forfeiture prosecution are considered civil cases. *See United States v. Pease*, 331 F.3d 809, 816 (11th Cir. 2003) (concluding ancillary proceedings under § 853(n) are civil cases).

Moreover, the notice provisions of Rule G(4)(b)(iii) simply codify and restate prevailing due process requirements governing adequate notice. The Supreme Court has long held that due process is satisfied where notice is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S. Ct. 652, 657 (1950); *see also Dusenbery v. United States*, 534 U.S. 161, 170, 122 S. Ct. 694, 701 (2002). Due process does not require that an

14

interested party actually receive notice of the proceedings, nor does it demand that the Government employ the best or most reliable means of ensuring notice. *Dusenbery*, 534 U.S. at 170-72, 122 S. Ct. at 701-02. While it does not appear that we have specifically considered the issue, numerous other courts have held that due process can be satisfied by mailing notice of a forfeiture proceeding to a party's attorney, even where the attorney only represented the party in a pending and related proceeding. *See Nunley v. Dep't of Justice*, 425 F.3d 1132, 1139 (8th Cir. 2005) (holding an inmate was afforded due process when the Government sent a notice of administrative forfeiture to him in care of his attorney); *Bye v. United States*, 105 F.3d 856, 857 (2d Cir. 1997) (concluding the Government gave sufficient notice of an administrative forfeiture by sending notice, which was acknowledged and received, to the attorney representing the defendant in a pending and related criminal proceeding); *United States v. 51 Pieces of Real Property, Roswell, N.M.*, 17 F.3d 1306, 1317 (10th Cir. 1994) (holding sufficient notice of a civil forfeiture proceeding was given when the Government sent notice to an interested party through the attorney representing him in an ongoing criminal prosecution).

The district court did not err in finding that, under the applicable statutes, rules, and due process requirements, the written notice of forfeiture sent to

Davenport's attorney was adequate, thereby triggering the mandatory 30-day period for filing third-party petitions and rendering Davenport's petition untimely. Since ancillary forfeiture proceedings have long been considered civil in nature, the rules governing civil forfeiture actions, including Rule G, would have been employed even before Rule 32.2 was amended. In any event, regardless of the formal applicability of Rule G, the notice of forfeiture sent to Davenport's attorney satisfied prevailing due process requirements. The record shows that Dicks continued to represent Davenport after the termination of her criminal case. He communicated with the Government after receiving the written notice of forfeiture, filed the third-party petition on Davenport's behalf, and was not formally discharged by her until after he received the Government's notice and had filed the third-party petition.[10] These actions show that he was Davenport's attorney for the purpose of the ancillary petition.

Contrary to Davenport's contention, the written notice of forfeiture sent to Dicks was not ambiguous with respect to the governing deadline. The fact that Davenport filed a timely administrative claim regarding the currency did not mean that she was exempt from complying with the unconditional language of the

---

[10] We need not decide whether Dicks' representation during Davenport's criminal prosecution and administrative forfeiture alone was sufficient to deem him Davenport's attorney for notice purposes.

16

criminal forfeiture statute, which requires the filing of a timely petition in an ancillary criminal forfeiture proceeding. *See* 21 U.S.C. § 853(n)(2). Accordingly, the district court did not err in dismissing Davenport's petition as untimely.

## C. Relief under Federal Rule of Civil Procedure 60(b)(1)

Davenport argues the district court erred in declining to treat her untimely petition as an application for Rule 60(b) relief due to mistake, inadvertence, or excusable neglect. Her claim for relief was, and continues to be, predicated on the contention that her former attorney reasonably believed the Government's published notice of forfeiture superseded the prior written notice he received, and thus established the governing deadline, because (1) he no longer represented Davenport in the criminal action when he received the written notice, (2) the two notices gave different deadlines and did not state that Rule G's notice provisions would apply, and (3) the written notice itself was ambiguous with respect to the applicable deadline. Davenport further contends that she and her attorney did not act in bad faith, that the Government was not prejudiced by the filing delay, and that she should not be penalized because the Government failed to serve her directly with the written notice of forfeiture.

We review a district court's denial of relief under Rule 60(b) for an abuse of discretion. *Big Top Koolers, Inc. v. Circus-Man Snacks, Inc.*, 528 F.3d 839, 842

17

(11th Cir. 2008). Rule 60(b)(1) authorizes a district court to relieve a party from a final judgment, order, or proceeding due to "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). "[F]or purposes of Rule 60(b), 'excusable neglect' is understood to encompass situations in which the failure to comply with a filing deadline is attributable to negligence." *Cheney v. Anchor Glass Container Corp.*, 71 F.3d 848, 850 (11th Cir. 1996) (quotation omitted). "[W]hether a party's neglect of a deadline may be excused is an equitable decision turning on all relevant circumstances surrounding the party's omission." *Id.* (quotation omitted). Pertinent factors include "the danger of prejudice to the opposing party, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.* (quotation and alteration omitted).

Although an attorney's inadvertent failure to comply with a filing deadline may constitute excusable neglect, we have recognized a material distinction between an attorney's mistake of law and a mistake of fact. *See Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1355-56 (11th Cir. 2009); *Advanced Estimating Sys., Inc. v. Riney*, 130 F.3d 996, 998 (11th Cir. 1997). While an attorney error based on a misunderstanding or misinterpretation

18

of the law generally cannot constitute excusable neglect, a mistake of fact, such as miscommunication or a clerical error, may do so under the pertinent factors. *Anthem*, 591 F.3d at 1356; *Riney*, 130 F.3d at 998-99. Thus, we have held that an attorney's failure to understand or review clear law cannot, as a categorical matter, constitute excusable neglect to relieve a party from the consequences of failing to comply with a statutory deadline. *Riney*, 130 F.3d at 997-99. We have also held that a district court does not abuse its discretion in declining to grant relief under Rule 60(b)(1) based on an attorney's misinterpretation of a procedural rule, where ample caselaw exists to put the attorney on notice that his interpretation is mistaken. *Cavaliere v. Allstate Ins. Co.*, 996 F.2d 1111, 1115 (11th Cir. 1993). In contrast, in an analogous case concerning Bankruptcy Rule 9006(b)(1), the Supreme Court held that an attorney's failure to file a proof of claim within a court-ordered deadline constituted excusable neglect in light of the "dramatic ambiguity" in the bankruptcy court's notice to the parties regarding the filing deadline. *Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 382-83, 398-99, 113 S. Ct. 1489, 1491-92, 1499-1500 (1993). Nevertheless, both the Supreme Court and this Court have emphasized that represented parties are not entitled to relief simply because they were penalized by the omissions of counsel. *See Pioneer*, 507 U.S. at 396-97, 113 S.Ct. at 1499; *Cavaliere*, 996 F.2d at 1115.

19

Since the Government's written notice of forfeiture and existing law were sufficient to alert Dicks of the applicable deadline for filing a third-party petition on Davenport's behalf, his misinterpretation of the deadline could not, as a matter of law, constitute excusable neglect to warrant relief under Rule 60(b)(1). Contrary to Davenport's contention, the written notice unambiguously informed Dicks that he had 30 days from the time that he received the notice to file a petition. Moreover, even prior to the December 2009 amendment of Rule 32.2, sufficient caselaw and other legal authority put Dicks on notice that either the notice provisions of Rule G applied to ancillary criminal forfeiture proceedings or that, in the absence of any statutory definition of proper notice, the written notice he received was adequate under prevailing due process standards. Dicks' failure to review or fully appreciate the law governing adequate notice cannot qualify as excusable neglect. Further, Dicks' conversation with the Government regarding his belief that his filing in the administrative forfeiture action was sufficient to protect Davenport's interests in the criminal action belies any argument that he was no longer Davenport's attorney. As such, the district court did not abuse its discretion in declining to grant relief under Rule 60(b)(1).

## III.  CONCLUSION

Davenport's appeal of the POF is DISMISSED.  The district court's rejection of Davenport's § 853(n) petition and denial of Rule 60(b) relief are AFFIRMED.

**DISMISSED, in part; AFFIRMED, in part.**