[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

Nos. 15-14799, 16-10919
Non-Argument Calendar

_____

D.C. Docket No. 1:15-cv-20263-UU

SAFARI PROGRAMS, INC.,
d.b.a. Safari Ltd.,

Plaintiff - Appellee,

versus

COLLECTA INTERNATIONAL LIMITED,
A Hong Kong Company,

Defendant - Appellant,

QUERICA, INC.,
a Florida Corporation,
d.b.a. IQON,

Defendant.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(April 25, 2017)

Before MARTIN, ROSENBAUM, and ANDERSON, Circuit Judges.

PER CURIAM:

Plaintiff Safari Programs, Inc., ("Safari") brought this lawsuit against CollectA International Limited ("CollectA") for false advertising under the Lanham Act, 15 U.S.C. § 1125(a), and unfair competition under the Florida common law. CollectA appeals the final default judgment entered against it and the district court's refusal to set aside the judgment under Rule 60(b), Fed. R. Civ. P. In support of its appeal, CollectA presents two main arguments: (1) the district court should have set aside the default judgment under Rule 60(b) because CollectA established that its failure to timely respond to Safari's complaint was the result of "excusable neglect"; and (2) CollectA was entitled to an opportunity to be heard on the issue of damages and injunctive relief before the district court entered the final default judgment.

We vacate both the denial of CollectA's Rule 60(b) motion and the final default judgment. On the issue of excusable neglect, we conclude that the district court abused its discretion by failing to apply the proper legal standard. On the issue of damages, we conclude that the district court abused its discretion by entering a final default judgment without holding an evidentiary hearing to determine damages and injunctive relief. We remand for further proceedings consistent with this opinion.

2

# I. Background

## A.    *Underlying Case*

Safari initiated this lawsuit in January 2015 in the Southern District of Florida.  According to Safari's complaint, both CollectA, a foreign company located in Hong Kong, and Safari manufacture and sell specialty toy figurines.[1] They are direct competitors.  Quercia, Inc., d/b/a IQON ("IQON"), a Florida corporation, was the exclusive distributor of CollectA's products in the United States.  IQON was formed by David Quercia ("Quercia"), a former "high-ranking employee with Safari."

Safari claimed that "CollectA/IQON" made the following false or misleading advertisements to the public:  (1) that CollectA had been manufacturing toy animal figurines for over 30 years, despite not existing prior to 2010; (2) that it was a European brand, despite manufacturing its specialty toys in Hong Kong or China; and (3) that it was the "#1 requested brand worldwide."  For remedies, Safari sought an accounting of profits from the time the allegedly false advertisements were first disseminated, disgorgement of profits, and injunctive relief.

---

[1]  On appeal, Safari elaborates that both Safari and CollectA manufacture and sell high-quality miniature replicas of dinosaurs, wildlife, and other figures, for resale in museums, zoo gift shops, educational stores, and science sections of toy stores.

On June 2, 2015, the district court dismissed IQON from the action for Safari's failure to effect timely service. But the court allowed Safari additional time to serve CollectA, the foreign defendant. On August 7, 2015, Safari filed documents reflecting that service had been effected on CollectA on June 24, 2015.

On August 14, 2015, the district court *sua sponte* issued an order requiring Safari to show cause why it had not moved for a clerk's entry of default against CollectA, given that CollectA has not responded to Safari's complaint by July 15, 2015, the deadline for a responsive filing based on the date of service. Safari moved for a clerk's entry of default against CollectA on August 20, 2015. The clerk entered default against CollectA on August 25, 2015. That same day, the court *sua sponte* ordered Plaintiff to file a motion for final default judgment against CollectA no later than September 4, 2015.

On September 3, 2015, Safari moved for entry of final default judgment against CollectA. Safari claimed that default judgment should be entered as to CollectA's liability on the merits and that Safari's damages could be established by affidavit. In support of its damages request, Safari submitted an affidavit from Alexandre Pariente, the CEO of Safari, which purported to calculate Safari's lost profits due to CollectA's false advertising. Comparing Safari's sales figures at an annual specialty toy show—which "may foreshadow the sales growth or loss of a company during the remainder of the year"—from before and after the allegedly

4

false advertising began, Pariente extrapolated that Safari had lost $5,875,026.36 in profits because of the false advertising.[2]

On September 9, 2015, the district court received a letter from Ken Leung on behalf of CollectA sent overnight from Hong Kong. In the letter, Leung stated that CollectA had received the notice of clerk's default on September 8, 2015. Leung wrote that CollectA was "astonished" by the notice because Safari had filed an identical case against CollectA in June 2015 in the same district. In CollectA's view, the second case had superseded the first case and the clerk's default in the first case "should be invalid" as a result. Leung directed the court's attention to the civil cover sheet for the second case, which designated the origin of the case as "Reinstated or Reopened." Leung asked the court to "kindly let us know if our understanding were [sic] incorrect."

On September 17, 2015, the district court granted Safari's motion for final default judgment and, without notice, struck Leung's letter because a corporation must be represented by counsel and cannot appear *pro se*. *See Palazzo v. Gulf Oil*

---

[2] According to Pariente's affidavit, Safari had nearly doubled its sales at the annual American Specialty Toy Retailing Association ("ASTRA") show every year from 2011 to 2013, rising from $22.158.65 in 2011, to $42,102.55 in 2012, and to $83,394.94 in 2013. In 2014, however, the year CollectA began its allegedly false advertising, Safari's ASTRA sales dropped to $65,208.48, a decrease of 22% from the prior year, and 2015 "was on that same downward trajectory." Pariente explained that "[a]pplying the 22% representative loss" to Safari's net profits in 2014 ($2,694,719.00) "would amount to a $592,828.18 loss of potential profits." And had Safari realized the same nearly double annual rate of growth in 2014 as reflected in the years 2011–2013, Pariente stated, "Safari would have earned an additional $2,641,094.09 in net profits." "Applying the same formula to 2015," Pariente claimed that the "same figure of $2,641,094.09, should be applied to the year 2015 as well," since the "sales trajectory for 2015 [was] essentially the same as 2014."

*Corp.*, 764 F.2d 1381, 1385 (11th Cir. 1985) (corporations cannot appear *pro se* and must be represented by counsel).  The next day, and without holding a hearing on damages, the court entered a final default judgment against CollectA in the amount of $5,909,686.36, an amount composed of $5,875,026.36 in compensatory damages, $1,300 in court costs, and $33,360 in attorney's fees.  The court also entered a permanent injunction prohibiting CollectA from making the three false advertisements alleged in the complaint.

On October 21, 2015, CollectA, represented by local counsel, filed a timely notice of appeal from the final default judgment.  That appeal was docketed in this Court as No. 15-14799.

## B.    *Safari's Second Lawsuit against CollectA and IQON*

As Leung's September 9 letter to the district court noted, Safari filed a second, identical complaint in the Southern District of Florida against both CollectA and IQON (the "second case") in June 2015, two days after the district court dismissed IQON from the instant proceeding before Judge Ursula Ungaro (the "first case").[3]  *Safari Programs, Inc. v. CollectA Int'l Ltd.*, U.S. Dist. Ct. for S.D. Fla., Case no. 1:15-cv-22132-MGC, Doc. 1 (S.D. Fla. 2015).  The civil cover sheet for the second case listed the case origin as "Reinstated or Reopened," though it also listed the case before Judge Ungaro as a "Related Case."

---

[3]  The complaint in the second case appears to be a verbatim copy of the complaint in the first case.  Indeed, the second complaint bears the same January 2015 date as the first complaint.

On June 18, 2015, Judge Marcia Cooke, the district judge in the second case, entered an order expediting service. In response, Safari again took steps to serve both defendants. But once Judge Ungaro entered default judgment against CollectA in the first case, Safari filed a notice voluntarily dismissing CollectA as a defendant in the second case. In August 2016, Judge Cooke dismissed Safari's second case for failure to perfect service on IQON. It appears that soon after dismissal of the second case, Safari filed a third lawsuit against IQON on August 22, 2016, which is now pending before a third judge, Judge Cecilia Altonaga, in the Southern District of Florida under Case No. 1:16-cv-23611-CMA.

## C.    CollectA's Motion for Relief from the Final Default Judgment

On October 23, 2015, two days after noticing its appeal from the final default judgment, CollectA moved for relief from the judgment under Rule 60(b), Fed. R. Civ. P. CollectA argued that relief was appropriate based on, among other grounds, "mistake, inadvertence, surprise, or excusable neglect," *see* Rule 60(b)(1), and "any other reason that justifies relief," *see* Rule 60(b)(6).[4]

CollectA contended that the judgment should be reopened under either (b)(1) or (b)(6) because Safari's filing of a duplicative lawsuit against CollectA in June 2015 was confusing and led CollectA to believe that Safari had abandoned the first case and intended to proceed with the second. "[A]s a foreign defendant

---

[4] CollectA also sought relief under Rule 60(b)(4) (authorizing relief where "the judgment is void"), but it has abandoned reliance on this ground on appeal.

7

unfamiliar with litigation in United States courts," CollectA maintained that its confusion was reasonable, as was its mistaken attempt to inform the court of its position through Leung's letter.

In support of its Rule 60(b) motion, CollectA submitted a declaration from Leung, the General Manager of CollectA. Leung wrote that CollectA first learned of the original lawsuit on February 25, 2015, when it received correspondence from an attorney in the United States seeking to represent CollectA. Then, on June 15, 2015, CollectA was contacted by another attorney in the United States about the second case. After viewing "online sources," CollectA found that the second case had been filed on June 4, 2015, after IQON had been dismissed as a defendant in the first case. Noticing that the complaint filed in the second case was identical to the complaint in the first case, CollectA believed that the service papers it later received on June 24, 2015, "were for a lawsuit that had been dismissed or withdrawn," so CollectA waited for service of the second case. Leung stated that CollectA had sought advice from a Hong Kong-based attorney who was admitted to practice in the United States. Based on that consultation, it was CollectA's understanding that no further action was needed regarding the first case.

CollectA also maintained that it had meritorious defenses to Safari's complaint and that Safari would not be prejudiced by reopening the case, since Safari was then litigating the same case against IQON before Judge Cooke.

8

CollectA attached a proposed answer and affirmative defenses as well as affidavits addressing its defenses.   Finally, CollectA asserted that it was entitled to an opportunity to defend itself on the issue of damages even if the court properly entered default judgment as to liability.

Safari responded that CollectA's reasons for not responding to the complaint were insufficient to constitute excusable neglect because they either amounted to attorney negligence or showed that CollectA did not have adequate internal safeguards to timely respond to a lawsuit.

In reply, CollectA disputed Safari's characterization of its grounds for relief and reiterated that Safari's actions reflected an intent to abandon the first case and proceed with the second.   In CollectA's view, Safari was attempting to maintain both lawsuits against CollectA "in order to double its odds at success, without regard for the confusion caused by this behavior."

### D.    *District Court's Denial of CollectA's Rule 60(b) Motion*

On February 2, 2016, the district court denied CollectA's motion for relief from the default judgment.   On the question of "mistake, inadvertence, or excusable neglect" under Rule 60(b)(1), the court explained that CollectA must show three things:  (1) it has a meritorious defense to the action; (2) granting the motion would not prejudice the non-defaulting party; and (3) there was a good reason for failing to respond to the complaint.

9

Acknowledging that Safari's "actions were confusing," the district court nevertheless found that they were not confusing enough to provide a good reason for CollectA's failure to respond.  Under the plain language of Rule 12(a), Fed. R. Civ. P., the court explained, CollectA was required to file a response within 21 days after being served with the summons and complaint, but it did not file anything with the court until October 21, 2015, almost four months after it was served.  The court stated that there was no reason for CollectA to think a response was not required because the complaint had not been dismissed and the case had not been closed.  The court concluded, "CollectA's misunderstanding of what Rule 12 required, its attorney's misunderstanding of the rules, and its complete failure to file anything in this action until almost four months after being served do not constitute a good reason for failing to respond."  Accordingly, the court denied CollectA's request for relief under Rule 60(b)(1) and, for largely the same reasons, found that relief was not warranted under Rule 60(b)(6).

CollectA timely appealed that order, which was docketed in this Court as No. 16-10919.  The two appeals—Nos. 15-14799 & 16-10919—have now been consolidated.

## II.  Standards of Review

We review for abuse of discretion a district court's denial of a motion to set aside a default judgment.  *Feltman v. Valdez (In re Worldwide Web Sys., Inc.)*, 328

10

F.3d 1291, 1295 (11th Cir. 2003).  Likewise, we review for abuse of discretion the district court's decision whether to hold a hearing on damages in cases of defaults. *Giovanno v. Fabec*, 804 F.3d 1361, 1366 (11th Cir. 2015).

The abuse-of-discretion standard is deferential and affords a range of choice to the district court.  *Heffner v. Blue Cross & Blue Shield of Ala., Inc.*, 443 F.3d 1330, 1337 (11th Cir. 2006).  Nevertheless, an abuse of discretion occurs if the court does not apply the proper legal standard, does not follow proper procedures in making the determination, or relies on clearly erroneous factual findings.  *Id.*

## III.  Discussion

### A.    *Motion for Relief from the Final Default Judgment*

District courts "may set aside a final default judgment under Rule 60(b)." Fed. R. Civ. P. 55(c).  The aim of Rule 60(b), Fed. R. Civ. P., is "to strike a delicate balance between two countervailing impulses: the desire to preserve the finality of judgments and the incessant command of the court's conscience that justice be done in light of all the facts."  *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 401 (5th Cir. Jan. 1981) (internal quotation marks omitted).[5]

Thus, in some circumstances, the interests of finality must give way "to the equities of the particular case in order that the judgment might reflect the true

---

[5]  This Court adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

11

merits of the cause." *Id.* And because of our "strong policy of determining cases on their merits," "defaults are seen with disfavor." *Fla. Physician's Ins. Co., Inc. v. Ehlers*, 8 F.3d 780, 783 (11th Cir. 1993). As a result, Rule 60(b), which ordinarily "should be liberally construed in order to do substantial justice," *Seven Elves*, 635 F.2d at 401, "is applied most liberally to judgments in default," *id.* at 403. *See Solaroll Shade & Shutter Corp., Inc. v. Bio-Energy Sys., Inc.*, 803 F.2d 1130, 1132 (11th Cir. 1986). Although our review is for an abuse of discretion, "where denial of relief precludes examination of the full merits of the cause, even a slight abuse may justify reversal." *Seven Elves*, 635 F.2d at 402.

Rule 60(b) lists a number of grounds for relief from a final judgment, including, as relevant here, "mistake, inadvertence, surprise, or excusable neglect," Fed. R. Civ. P. 60(b)(1), and "any other reason that justifies relief," Fed. R. Civ. P. 60(b)(6). We address each ground separately.

### 1.    Excusable Neglect under Rule 60(b)(1)

CollectA first argues that the district court should have set aside the final default judgment on grounds of excusable neglect under Rule 60(b)(1). We have stated that to establish grounds for relief under Rule 60(b)(1) "a defaulting party must show that: (1) it had a meritorious defense that might have affected the outcome; (2) granting the motion would not result in prejudice to the non-

12

defaulting party; and (3) a good reason existed for failing to reply to the complaint." *In re Worldwide Web Sys., Inc.*, 328 F.3d at 1295.

At bottom, though, the determination of what constitutes excusable neglect is an equitable one, taking into account the totality of the circumstances surrounding the party's omission. *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 934 (11th Cir. 2007); *see In re Worldwide Web Sys., Inc.*, 328 F.3d at 1297 (stating that "a determination of excusable neglect is an equitable one that necessarily involves consideration of all three elements—a meritorious defense, prejudice, and a good reason for not responding to the complaint"). In *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, the Supreme Court identified four factors pertinent to evaluating the totality of the circumstances: "the danger of prejudice to the [opposing party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." 507 U.S. 380, 395, 113 S. Ct. 1489, 1498 (1993). The Court held that excusable neglect encompasses situations of negligence within the defaulting party's control and placed primary importance on the absence of prejudice and the interests of efficient judicial administration. *Id.* at 388, 394, 397–99, 113 S. Ct. at 1495, 1497, 1499–500; *see In re Worldwide Web Sys., Inc.*, 328 F.3d at 1297.

Here, we conclude that the district court abused its discretion by failing to consider all relevant factors and by failing to properly evaluate the factors that it did consider. *See Heffner*, 443 F.3d at 1337. Under *Pioneer,* the determination of excusable neglect is an equitable one that should take into account the totality of the circumstances surrounding the party's omission. In this case, however, the court relied on CollectA's reasons for the delay and the length of the delay to the exclusion of all other factors. Specifically, the court concluded that CollectA's negligence was not excusable because it had failed to comply with Rule 12, Fed. R. Civ. P., and had waited over four months after service to respond.

Finding no "good reason" to excuse the four-month delay, the district court did not address other factors that both this Circuit and the Supreme Court have found relevant to the analysis, including the prejudice to Safari, whether CollectA acted in good faith, the effects on the interests of efficient judicial administration apart from the length of the delay, whether CollectA had meritorious defenses to the complaint, the amount of money involved, *see Seven Elves, Inc.*, 635 F.2d at 403, and the possibility of inconsistent and unfair results in the event that IQON prevails on the same claims against it in the separate litigation, *cf. Gulf Coast Fans, Inc. v. Midwest Elecs. Imps., Inc.*, 740 F.2d 1499, 1512 (11th Cir. 1984) ("[W]hen defendants are similarly situated, but not jointly liable, judgment should not be entered against a defaulting defendant if the other defendant prevails on the

14

merits."). Accordingly, the court's order does not reflect consideration of the totality of the circumstances in evaluating whether CollectA established excusable neglect. *See Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1356 (11th Cir. 2009) (holding that the district court "abused its discretion because it did not even consider the *Pioneer* factors" when it simply "concluded that Plaintiffs' counsel's error was not excusable because counsel failed to comply with a series of orders").

Although the lack of a good reason combined with the length of delay may in some cases preclude relief under Rule 60(b)(1), the district court's order does not reflect a proper evaluation of these two factors in this case. For starters, we believe that the court may have mistaken CollectA's error as one of law rather than of fact. This Circuit recognizes that an attorney's failure to understand or review clear law categorically cannot constitute excusable neglect. *United States v. Davenport*, 668 F.3d 1316, 1324 (11th Cir. 2012). However, a materially different situation is present when the mistake is one of fact. *Id.* Thus, "under some circumstances the failure to meet a filing deadline because of an attorney's mistake of fact can constitute excusable neglect." *Id.* The court characterized CollectA's error as a misunderstanding of what Rule 12 required, but CollectA's grounds for relief were not dependent on any particular rule of civil procedure.

15

Instead, CollectA's error was about whether the first case would go forward, and thus whether a response was required, in light of Safari's filing of a second, duplicative lawsuit against both CollectA and IQON. Leung's declaration explains that CollectA was aware of the first lawsuit in February 2015 and was served with the complaint on June 24, 2015. When service was effected, however, CollectaA also knew that Safari had filed an identical complaint against CollectA earlier that month, that Safari had indicated that the second case was "[r]einstated or [r]eopened," and that Judge Cooke in the second case had entered an order expediting service. Thus, Safari's actions created a confusing situation where CollectA was named as a defendant in two identical cases, with the second case being more comprehensive (in that it included IQON) than the first. Only after Safari filed its motion for final default judgment in the first case did it notify Judge Cooke that it longer intended to proceed against CollectA in the second case.

Of course, as the district court pointed out, the complaint in the first case had not been dismissed and the case had not been closed, so CollectA's failure to timely respond to the first complaint plainly was negligent. Nevertheless, it was not negligence based upon a misunderstanding of a procedural rule, and even negligence within the party's control may in some circumstances be excusable. *See Pioneer*, 507 U.S. at 388, 394, 113 S. Ct. at 1495, 1497. Given that the district court recognized that Safari's actions were confusing—an assessment with which

we certainly agree, we cannot say that CollectA is categorically barred from establishing excusable neglect on these facts without an examination of the other relevant factors.

As for the length of the delay, we have recognized that "[t]he longer a defendant—even a foreign defendant—delays in responding to a complaint, the more compelling the reason it must provide for its inaction when it seeks to set aside a default judgment." *Sloss Indus. Corp.*, 488 F.3d at 935.  Thus, the court properly considered the length of delay in evaluating CollectA's Rule 60(b)(1) motion, and we have found delays of similar length to be inexcusable without a good reason. *See, e.g.*, *id.* (three-and-a-half-month delay after service of process inexcusable where defaulting party failed to offer adequate reasons for delay).

However, the problem with the district court's reliance on the length of delay in this case is that court's statement that CollectA did not file anything with the court until October 21, 2015, is not correct.  While it is true that October 21 was the date of the first counseled filing, CollectA first notified the court of its confusion through Leung's letter on September 9, one day after the clerk entered default and more than one week *before* the court entered the default judgment.  So, in fact, CollectA's first filing was about a month and a half earlier than the court recognized.

17

We understand that the district court struck Leung's letter as an unauthorized *pro se* filing on behalf of a corporation. But the court did so without notice to CollectA and an opportunity to obtain counsel, which generally is required before a court takes a dispositive action with respect to a corporate party, such as striking a filing, dismissing a case, or, as here, entering default judgment. *See Palazzo*, 764 F.2d at 1386 (affirming dismissal of corporate claims brought by a *pro se* plaintiff where the plaintiff was "fully advised of the need for proper representation of the corporate claims"); *K.M.A., Inc. v. Gen. Motors Acceptance Corp.*, 652 F.2d 398, 399 (5th Cir. July 1981) (granting a corporation additional time to obtain counsel before dismissing an appeal completely); *see also Memon v. Allied Domecq QSR*, 385 F.3d 871, 873–74 (5th Cir. 2004) ("In virtually every case in which a district court dismissed the claims (or struck the pleadings) of a corporation that appeared without counsel, the court expressly warned the corporation that it must retain counsel or formally ordered it to do so before dismissing the case."). We also find it significant that the court entered default judgment without first notifying CollectA that its stated understanding of the duplicative cases was incorrect.

For the reasons stated, we conclude that the district court failed to consider all factors relevant to the excusable neglect analysis and did not properly evaluate the factors on which it explicitly relied. Because the determination of excusable neglect under Rule 60(b) is an equitable one within the district court's discretion,

18

we vacate the denial of CollectA's Rule 60(b) motion and remand to the district court for further proceedings in light of this opinion.  *See Advanced Estimating Sys. Inc. v. Riney*, 77 F.3d 1322, 1325 (11th Cir. 1996) (remanding for the court to decide the issue of excusable neglect under the correct standard).

### 2.    Exceptional Circumstances under Rule 60(b)(6)

In the alternative, CollectA claims that relief should have been granted under Rule 60(b)(6), but "[t]his Court consistently has held that 60(b)(1) and (b)(6) are mutually exclusive.  Therefore, a court cannot grant relief under (b)(6) for any reason which the court could consider under (b)(1)."  *Solaroll Shade*, 803 F.2d at 1133.  Here, CollectA's reasons for relief fall under Rule 60(b)(1), which its Rule 60(b) motion makes clear:  "All roads in this case lead back to Safari's filing of the Second Case, which incited the confusion that resulted in CollectA's ***mistake, inadvertence and excusable neglect*** in failing to appear and defend against the First Case."  Accordingly, relief is not available under Rule 60(b)(6).  *See id.*

## B.    *Damages and Injunctive Relief*

Finally, CollectA argues that the district court abused its discretion when, without holding a hearing or allowing CollectA the opportunity to defend itself, the court determined damages and granted injunctive relief.  We agree.

Damages in cases of default are governed by Rule 55.  Rule 55(b)(1) permits entry of judgment by the clerk without a hearing in cases where "the plaintiff's

19

claim is for a sum certain or a sum that can be made certain by computation." Fed. R. Civ. P. 55(b)(1). "Rule 55(b)(2), which covers 'all other cases,' requires the district court to hold an evidentiary hearing 'to determine the amount' of losses involved." *S.E.C. v. Smyth*, 420 F.3d 1225, 1231–32 (11th Cir. 2005); *see United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979) ("The case law is clear that a judgment by default may not be entered without a hearing unless the amount claimed is a liquidated sum or one capable of mathematical calculation."). Although an evidentiary hearing is not a "*per se* requirement," given the permissive language in Rule 55(b)(2) ("The court *may* conduct hearings . . . ."), we have stated that evidentiary hearings "are required in all but limited circumstances," such as when hearing "any additional evidence would be truly unnecessary to a fully informed determination of damages." *Smyth*, 420 F.3d at 1232 n.13.

Here, an evidentiary hearing on damages was necessary. Damages for false advertising under the Lanham Act are neither liquidated nor capable of objectively ascertainable mathematical calculation. *See* 15 U.S.C. § 1117(a) (granting district courts significant discretion to award damages for a violation of § 1125(a)). Moreover, the evidence before the court—a single affidavit from Safari's CEO relying on a dubious extrapolation from limited sales data—was not sufficient to make a "fully informed determination of damages." *See Smyth*, 420 F.3d at 1232

n.13.  Because an evidentiary hearing was required, the district court abused its discretion by entering the final default judgment before holding a hearing to determine damages and injunctive relief.  *See id.* at 1231–32 ("[I]f an evidentiary hearing or other proceedings are necessary in order to determine what the judgment should provide, such as the amount of damages that the defaulting defendant must pay, those proceedings must be conducted before the judgment is entered.").

Accordingly, we vacate the district court's entry of default judgment and we remand for further proceedings.[6]

## IV.  Conclusion

For the reasons stated, we conclude that the district court abused its discretion in analyzing the issue of excusable neglect under Rule 60(b)(1) and in failing to hold an evidentiary hearing on damages and injunctive relief before entering final default judgment.  Accordingly, we vacate the final default judgment and the denial of CollectA's Rule 60(b)(1) motion, and we remand for further proceedings consistent with this opinion.

**VACATED AND REMANDED.**

---

[6]  Because we must vacate the default judgment since the damages could not have properly been determined on this record without an evidentiary hearing, on remand, CollectA's Rule 60(b) motion must be evaluated on remand as a motion to set aside the default under Rule 55(c), Fed. R. Civ. P.  Consequently, the "good cause" standard applies to the district court's consideration of CollectA's motion on remand.

21