[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

Nos. 15-12643 & 16-15687
_____

D.C. Docket No. 6:08-cr-00176-JA-GJK-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FRANK AMODEO,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Middle District of Florida
_____

(February 21, 2019)

Before WILLIAM PRYOR and ROSENBAUM, Circuit Judges, and MOORE,[*]
District Judge.

WILLIAM PRYOR, Circuit Judge:

---

[*] Honorable K. Michael Moore, United States District Chief Judge for the Southern District of
Florida, sitting by designation.

This appeal presents the question whether a criminal defendant has standing to appeal the partial vacatur of the final forfeiture order entered in his case. Frank Amodeo pleaded guilty to involvement in a criminal scheme to divert his clients' payroll taxes. He agreed to forfeit many assets, including the ownership of two shell corporations. The district court entered a preliminary forfeiture order that divested Amodeo of those assets. After no third parties asserted an interest in the corporations, the court entered a final forfeiture order that transferred ownership of them to the government. Years later, the corporations were named as defendants in a lawsuit brought by victims of Amodeo's scheme. The government then moved to vacate the final forfeiture order as to the corporations, and the district court granted that motion. Amodeo appeals the partial vacatur on the ground that the district court lacked the authority to enter it. But because the partial vacatur caused him no injury, Amodeo lacks standing to complain about it. We dismiss his appeal for lack of jurisdiction.

## I. BACKGROUND

Frank Amodeo instigated a criminal scheme to divert his clients' payroll taxes to his companies' bank accounts instead of remitting that money to the Internal Revenue Service. After a grand jury returned a 27-count indictment, Amodeo reached a plea agreement with the government. He pleaded guilty to conspiracy to defraud the United States, failure to collect and remit payroll taxes,

2

and obstruction of an agency investigation. He agreed to forfeit many assets, including approximately $180 million, multiple properties, luxury cars, a Lear jet, and the ownership of several corporations. This appeal concerns two of those corporations: AQMI Strategy Corporation and Nexia Strategy Corporation.

The district court entered a preliminary forfeiture order for the assets listed in Amodeo's plea agreement, including AQMI and Nexia. The preliminary forfeiture order stated that it "shall be a final order of forfeiture as to the defendant, Frank L. Amodeo." The district court sentenced Amodeo to 270 months of imprisonment followed by three years of supervised release.

The government then moved for a final forfeiture order. No third parties claimed an interest in the corporations. The district court granted the motion and entered the final forfeiture order. It ordered that Amodeo's assets, including the corporations, were "condemned and forfeited to the United States," so "clear title to the property is now vested in the United States."

Amodeo appealed the final forfeiture order, but we dismissed his appeal for lack of jurisdiction. *United States v. Amodeo*, No. 09-16170 (11th Cir. Mar. 26, 2010). We explained that Amodeo lacked standing to appeal the final forfeiture order because the preliminary forfeiture order "fully and finally resolved all of Frank Amodeo's interests in the properties referenced in the . . . final forfeiture order." *Id.* at 1. Amodeo's lack of standing meant this Court lacked jurisdiction

3

over his appeal. *Id.* Amodeo also appealed his conviction, which we affirmed. *United States v. Amodeo*, 387 F. App'x 953 (11th Cir. 2010).

A few years later, victims of Amodeo's scheme filed a complaint against several corporations, including the forfeited AQMI and Nexia. *See* Complaint at 3, *Palaxar Grp. v. Williams*, No. 6:14-cv-00758-ORL-28GJK (M.D. Fla. Sept. 18, 2013), ECF No. 1. After AQMI and Nexia were served as defendants in the suit, the government moved to vacate the final forfeiture order only as to those corporations. The government explained that both corporations were shell corporations without any assets and that it had sought their forfeiture "to prevent their continued illegal use by [Amodeo] and to deprive [him] of any economic value that the corporations may have." The government informed the district court that it would not defend either corporation in the *Palaxar* suit and "believe[d] it . . . in the best interest of the [g]overnment to divest ownership of Nexia and AQMI." The district court granted the motion and vacated the final forfeiture order as to AQMI and Nexia. The final forfeiture order "otherwise remain[ed] in effect."

Amodeo moved to reconsider the partial vacatur on the ground that the district court lacked jurisdiction to alter the final forfeiture order, but the district court denied his motion. The court confirmed that it had vacated only the final forfeiture order in part, not the preliminary forfeiture order. It explained that, "[j]ust as Amodeo lacked standing to challenge the final order of forfeiture on

4

appeal, Amodeo also lack[ed] standing to challenge the partial vacatur of that order." Amodeo appealed the denial of his motion to reconsider the partial vacatur—the appeal before us now.

Meanwhile, Amodeo moved to intervene in the pending *Palaxar* suit. He contended that the partial vacatur of the final forfeiture order restored his ownership of AQMI and Nexia. The district court denied the motion, and we affirmed that denial. *See Palaxar Grp. v. Williams*, 714 F. App'x 926, 928–29 (11th Cir. 2017). We concluded that the partial vacatur did not return the ownership of the corporations to Amodeo because "the preliminary forfeiture order, which divested Mr. Amodeo of his ownership interest, was never disturbed." *Id.* at 929 & n.4. We explained that "[t]he government did not return its interest in AQMI to Mr. Amodeo; instead, the government relinquished its ownership interest after AQMI was sued." *Id.* at 928. And we noted that "[a] previous panel of this court recognized as much, and we have no basis or reason to reach a different conclusion." *Id.* at 928–29.

5

## II. STANDARD OF REVIEW

We review *de novo* questions of our jurisdiction. *United States v. Cartwright*, 413 F.3d 1295, 1299 (11th Cir. 2005).

## III. DISCUSSION

Amodeo argues that the district court lacked jurisdiction to partially vacate the final forfeiture order, but we lack jurisdiction to consider that question in this appeal. "On every writ of error or appeal, the first and fundamental question is that of jurisdiction, *first*, of this court, and *then* of the court from which the record comes." *Mansfield, C. & L.M. Ry. Co. v. Swan*, 111 U.S. 379, 382 (1884) (emphases added); *accord Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998); *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 547 (1986); *Great S. Fire Proof Hotel Co. v. Jones*, 177 U.S. 449, 453 (1900); *Castleberry v. Goldome Credit Corp.*, 408 F.3d 773, 779 (11th Cir. 2005). So this Court must satisfy itself of its jurisdiction *before* we can address whether the district court had jurisdiction. *See Peppers v. Cobb County*, 835 F.3d 1289, 1296 (11th Cir. 2016) ("[W]e are obliged first to consider our power to entertain the claim.").

That this Court must first satisfy itself of our own jurisdiction is a rule without exception: "Without jurisdiction[,] the court cannot proceed at all in any cause." *Steel Co.*, 523 U.S. at 94 (quoting *Ex parte McCardle*, 74 U.S. 506, 514 (1868)). "[J]urisdiction is power to declare the law," so when it does not exist, "the

6

only function remaining to the court is that of announcing the fact and dismissing the cause." *Id.* To do otherwise would "violate[] the fundamental constitutional precept of limited federal power" and so "offend[] fundamental principles of separation of powers." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 409–10 (11th Cir. 1999) (citations and internal quotation marks omitted).

Amodeo argues that the doctrine of standing does not apply to his criminal case, but Article III of the Constitution, from which standing derives, governs our jurisdiction in every type of case. Article III vests the judiciary with jurisdiction only over "Cases" and "Controversies." U.S. Const. Art. III, § 2. To have a case or controversy, a litigant must establish that he has standing, which must exist "throughout all stages of litigation." *Hollingsworth v. Perry*, 570 U.S. 693, 705 (2013). "That means that standing must be met by persons seeking appellate review, just as it must be met by persons appearing in courts of first instance." *Id.* (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 (1997)); *see also Wolff v. Cash 4 Titles*, 351 F.3d 1348, 1353 (11th Cir. 2003) ("Litigants must establish their standing not only to bring claims, but also to appeal judgments."). To establish appellate standing, a litigant must "prove that he has suffered a concrete and particularized injury that is fairly traceable to the challenged conduct, and is likely to be redressed by a favorable judicial decision." *Hollingsworth*, 570 U.S. at 704.

7

In the context of appellate standing, the primary meaning of the injury requirement is adverseness: "Only a litigant who is aggrieved by the judgment or order may appeal." *Wolff*, 351 F.3d at 1354 (citation and internal quotation marks omitted). "For there to be . . . a case or controversy, it is not enough that the party invoking the power of the court have a keen interest in the issue," *Hollingsworth*, 570 U.S. at 700; he "must seek relief for an injury that affects him in a personal and individual way," *id.* at 705 (citation and internal quotation marks omitted). So an appellant "must possess a direct stake in the outcome of the case." *Id.* To establish standing in a forfeiture proceeding, we have looked to whether the litigant has an interest in the property subject to the forfeiture because, absent an interest in that property, there is no case or controversy. *United States v. $38,000.00 in U.S. Currency*, 816 F.2d 1538, 1543 (11th Cir. 1987).

Amodeo argues that he has standing because the ownership of the corporations *might* have reverted to him when the district court partially vacated the final forfeiture order, but we disagree. Forfeiture divests a criminal defendant of property that can be described generally as the fruits of his crime. Under Federal Rule of Criminal Procedure 32.2, criminal forfeiture is split into two phases: the first phase concerns the defendant's ownership of the property to be forfeited, and the second phase concerns any third party's ownership of that property.

8

When, as Amodeo did, a criminal defendant pleads guilty and agrees to the forfeiture, the district court must promptly enter a preliminary forfeiture order. Fed. R. Crim. P. 32.2(b)(1)–(2). "At sentencing—or at any time before sentencing if the defendant consents—the preliminary forfeiture order becomes final *as to the defendant*." Fed. R. Crim. P. 32.2(b)(4)(A) (emphasis added). Although the preliminary forfeiture order is final as to the defendant, it "remains preliminary as to third parties until the ancillary proceeding is concluded." *Id.* The defendant may appeal the preliminary forfeiture order. Fed. R. Crim. P. 32.2(b)(4)(C).

The district court conducts an ancillary proceeding so that third parties can assert their interest in the property. Fed. R. Crim. P. 32.2(c). Although it occurs in the context of criminal forfeiture, the ancillary proceeding is civil in nature. *United States v. Davenport*, 668 F.3d 1316, 1323 (11th Cir. 2012). The ancillary proceeding exists to determine whether a third party has an interest in the property that the defendant has already forfeited—not to relitigate the preliminary order's finding of forfeitability. *Id.* at 1321. So the ancillary proceeding determines whether a third party or the government will obtain the forfeited property.

After the district court accounts for the interest of any third parties, it must enter a final forfeiture order. Fed. R. Crim. P. 32.2(c)(2). A defendant "generally has no standing to participate in the ancillary proceeding." *United States v. Pelullo*, 178 F.3d 196, 202 (3d Cir. 1999). And he cannot appeal the final forfeiture order

9

because it "has no bearing on the defendant's rights." *United States v. Flanders*, 752 F.3d 1317, 1343 (11th Cir. 2014).

Amodeo's argument that he potentially owns the corporations due to the partial vacatur is mistaken. The preliminary forfeiture order extinguished all of Amodeo's interest in the corporations. *United States v. Gross*, 213 F.3d 599, 600 (11th Cir. 2000). In fact, Amodeo expressly agreed that "the preliminary order of forfeiture shall be final as to the defendant at the time it is entered." So when the district court completed the first phase of the forfeiture by entering the preliminary forfeiture order, Amodeo had given up his interest in the corporations. Because no third parties asserted an interest during the ancillary proceeding, the government took ownership of the corporations when the district court entered the final forfeiture order.

The partial vacatur of the final forfeiture order did not revive Amodeo's ownership of the corporations. When an order is vacated, "the rights of the parties are left as though no such judgment had ever been entered." *United States v. De La Mata*, 535 F.3d 1267, 1276–77 (11th Cir. 2008) (quoting 49 C.J.S. *Judgments* § 357 (2008)). When the district court vacated the final forfeiture order, it vacated only the "Final Forfeiture Order (Doc. 177) . . . to the extent it pertains to Nexia Strategy Corporation and AQMI Strategy Corporation." Considering where the parties would stand had the district court never entered a final forfeiture order,

10

Amodeo would still lack any interest in the corporations because he forfeited it under the preliminary forfeiture order—which remains intact.

We have twice ruled that Amodeo had no interest left in the corporations after the entry of the preliminary forfeiture order. We first concluded that Amodeo lacked standing to appeal the final forfeiture order because the "preliminary order of forfeiture fully and finally resolved all of Frank Amodeo's interests in the properties referenced in the . . . final forfeiture order." *Amodeo*, No. 09-16170, at 1. Then, several years later, we ruled that the district court correctly denied Amodeo's motion to intervene in *Palaxar* because he lacked an interest in the defendant-corporations. 714 F. App'x at 928. We concluded that "[t]he government did not return its interest in AQMI to Mr. Amodeo [after the partial vacatur]; instead, the government relinquished its ownership interest after AQMI was sued." *Id.* We again explained that "the preliminary forfeiture order, which divested Mr. Amodeo of his ownership interest, was never disturbed." *Id.* at 929 n.4. Today, we reach the same conclusion for a third time: Amodeo has no interest in either AQMI or Nexia.

That conclusion means that Amodeo lacks standing to appeal the partial vacatur. We have "consistently adhered to one major proposition without exception: One who has no interest of his own at stake always lacks standing." *United States v. Weiss*, 467 F.3d 1300, 1311 (11th Cir. 2006) (emphasis omitted)

11

(citation and internal quotation marks omitted). Because the partial vacatur did not restore Amodeo's ownership of the corporations, or impose their potential liabilities on him, he has no interest at stake. That is, the partial vacatur did not aggrieve—or even affect—Amodeo, so he has suffered no injury from it. To put standing in the "more pedestrian terms" used by Justice Scalia, "it is an answer to the very first question that is sometimes rudely asked when one person complains of another's actions: 'What's it to you?'" Antonin Scalia, *The Doctrine of Standing as an Essential Element of the Separation of Powers*, 17 Suffolk U. L. Rev. 881, 882 (1983). Amodeo lacks standing because the "it"—the partial vacatur—is nothing to him.

Because Amodeo lacks standing, we must "dismiss this appeal regardless of whether or not the district court possessed authority to vacate the [final] order[] of forfeiture." *United States v. Cone*, 627 F.3d 1356, 1359 (11th Cir. 2010). Amodeo protests that it would be perverse if the district court could enter an order without jurisdiction and with no possibility of review, but the authority of the district court can be litigated in a case or controversy between parties who—unlike Amodeo— have a real interest in the effects of the partial vacatur, if any such parties exist. Even if they do not, the argument that if Amodeo "ha[s] no standing to sue, no one would have standing, is not a reason to find standing." *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 227 (1974). The assumption that "the

12

business of the federal courts is correcting . . . errors, and that 'cases and controversies' are at best merely convenient vehicles for doing so and at worst nuisances that may be dispensed with when they become obstacles to that transcendent endeavor," "has no place in our constitutional scheme." *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 489 (1982). We are a court of limited jurisdiction, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994), and Article III of the Constitution does not extend our jurisdiction to consider the question presented in this appeal.

## IV. CONCLUSION

We **DISMISS** Amodeo's appeal for lack of jurisdiction.

ROSENBAUM, Circuit Judge, concurring in the judgment:

I agree that Frank Amodeo has no standing here.  But I write separately because I respectfully disagree with the panel opinion's conclusion that Article III standing must always be determined first when more than one non-merits issue could dispose of a case.  Rather, no unyielding jurisdictional hierarchy exists, and courts retain discretion to dispose of a case on any non-merits, threshold basis when no ready answer to any such non-merits question is immediately obvious.

The Supreme Court has explained that "a federal court has leeway to choose among threshold grounds for denying audience to a case on the merits." (citations and quotation marks omitted).  *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007).  "[T]here is no mandatory sequencing of jurisdictional issues."  *Id.* (citation and quotation marks omitted).  For example, a federal court need not establish subject-matter jurisdiction before dismissing for lack of personal jurisdiction.  *Id.*  "Nor must a federal court decide whether the parties present an Article III case or controversy before abstaining under [an abstention doctrine]."  *Id.*

In determining which non-merits issue to address, a court may properly consider factors like "convenience, fairness, and judicial economy."  *Id.* at 432.  So of course, if "a court can readily determine that it lacks jurisdiction over the cause or the defendant, the proper course would be to dismiss on that ground."  *Id.* at 436.

14

But at bottom, "[j]urisdiction is vital only if the court proposes to issue a judgment on the merits." *Id.* at 431 (citation and quotation marks omitted).

This case raises two non-merits, jurisdictional[1] questions: whether Amodeo has Article III standing and whether federal courts have subject-matter jurisdiction to partially vacate a final order of forfeiture in the circumstances of this case.

On the issue of standing, the panel opinion attempts to distinguish between appellate and district-court jurisdiction. But even assuming, *arguendo*, that *Sinochem*'s sequencing rules do not apply to jurisdictional issues unique to our appellate jurisdiction, the panel opinion forgets that Amodeo has the same basis for being heard by us as he had for being heard by the district court. No intervening change affected Amodeo's standing between the time the district court decided that he had no standing and the time Amodeo appealed that ruling to us. Our jurisdiction in terms of standing turns on whether Amodeo had standing below, and if he did not, we must dismiss the case for lack of jurisdiction. We therefore confront the same jurisdictional question in terms of Article III standing that the district court did.

Similarly, we also face the same jurisdictional question that the district court did as to whether federal courts have power to grant the government's requested

---

[1] The fact that these are both non-merits questions is enough to give us discretion to take either question first, as "[j]urisdiction is vital only if the court proposes to issue a judgment on the merits." *Sinochem*, 549 U.S. at 431. It just so happens that both non-merits issues here are jurisdictional.

15

partial vacatur of the final order of forfeiture in this case.  Because federal courts are courts of limited subject-matter jurisdiction, we must always consider whether subject-matter jurisdiction exists to grant a party's requested relief. *Thermoset Corp. v. Bldg. Materials Corp of Am.*, 849 F.3d 1313, 1316-17 (11th Cir. 2017).  If we find that the district court did not have jurisdiction to grant the government's request, all we can do is vacate the illegal order that the district court—and federal courts in general—had no authority to enter and dismiss the case. *Id.* at 1321.

In considering our jurisdiction, then, we face the same two threshold questions as did the district court.  Under *Sinochem*, if no answer to either question is readily apparent, we may exercise our discretion to address either issue first.

Here, however, the answer to the standing question is immediately obvious.  Amodeo cannot make a colorable claim that he has standing.  In fact, we have previously reached exactly this same conclusion in Amodeo's case.  In Amodeo's direct appeal from the final order of forfeiture, we unambiguously held that he lacked standing because the preliminary order of forfeiture already "fully and finally resolved all of" Amodeo's interests in the relevant properties—including the two companies at issue in this case. *See United States v. Amodeo*, No. 09-16170 (11th Cir. Mar. 26, 2010).  And even after the district court partially vacated the final order of forfeiture, we held that the preliminary order of forfeiture continued to govern, so Amodeo still had no interest in the two companies at issue here. *Palaxar Grp. v.*

16

*Williams*, 714 App'x 926, 928-29 & n.4 (11th Cir. 2017).  In short, it is immediately obvious that Amodeo has no standing, and his appeal is properly dismissed on that basis.

Yet the panel opinion goes further and imposes mandatory sequencing of non-merits issues by placing Article III standing unyieldingly before all other jurisdictional questions.  Majority Op. at 6 ("That this Court must first satisfy itself of our own jurisdiction is a rule without exception . . . .").  That contravenes *Sinochem*'s clear directive that "there is no mandatory sequencing of jurisdictional issues."[2]  *Sinochem*, 549 U.S. at 431 (citation and quotation marks omitted).  And so I concur only in the panel opinion's judgment.

---

[2] To be clear, under *Sinochem*, if no obvious answer existed to either of the jurisdictional questions we face today—if, say, Amodeo's standing turned on complicated questions of fact, or if the legal analysis for standing were mired in inter-Circuit splits—then we could first consider the question of the district court's jurisdiction to grant the government's requested relief.  But as I have described, as a matter of fact, that is not the case here.