[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-11221

_____

NATIONWIDE MUTUAL INSURANCE COMPANY,
NATIONWIDE MUTUAL FIRE INSURANCE COMPANY,
NATIONWIDE GENERAL INSURANCE COMPANY,

Plaintiffs-Appellees,

*versus*

DAVID J BARROW,
ANN BARROW,

Defendants,

A.B.,
a minor, by and through her next of friend and

2                    Opinion of the Court                    21-11221

parent, J.B.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 4:19-cv-01019-ACA

_____

Before WILLIAM PRYOR, Chief Judge, JORDAN, and ANDERSON, Circuit Judges.

WILLIAM PRYOR, Chief Judge:

This appeal concerns whether A.B., a victim of sexual abuse, can appeal a declaratory judgment that an insurer has no duty to defend the insured man who abused her. Because A.B. is not injured by the declaratory judgment, we dismiss for lack of jurisdiction.

## I. BACKGROUND

A.B. is a young woman who was sexually exploited by her mother and David Barrow when she was 10 years old. Barrow was A.B.'s mother's boss. On multiple occasions, A.B.'s mother arranged for Barrow to take sexually explicit photographs of A.B.

During the fourth instance of these photographs being taken, Barrow molested A.B. Barrow molested A.B. four or five times. Barrow also took photographs of himself abusing A.B. The abuse and photographing occurred at a hotel and at Barrow's home in Alabama.

Barrow was arrested in 2014 for sex crimes. In 2015, Barrow was indicted by a Madison County grand jury for human trafficking, sexual abuse of a child less than 12 years old, sodomy, and conspiracy to commit sexual abuse of a child less than 12 years old. Barrow pleaded guilty to two counts of human trafficking in 2016 and was sentenced for each count to imprisonment for 30 years to be served concurrently.

In February 2018, A.B. filed a lawsuit against Barrow in an Alabama court. A.B. issued a non-party subpoena to Barrow's insurance agent requesting copies of property and casualty insurance policies covering Barrow. In April 2019, A.B.'s attorney sent Nationwide Mutual Insurance Company a letter explaining that if A.B. secured a judgment against Barrow, A.B. would then seek satisfaction from Nationwide under Barrow's homeowner, dwelling, or personal umbrella policy.

Nationwide filed an action for a declaratory judgment in the district court naming Barrow, Barrow's former spouse, and A.B. as defendants. *See* 28 U.S.C. § 2201; *id.* § 1332. Nationwide sought a declaration that it owed no duty to defend or indemnify Barrow in the state court action A.B. is pursuing against him and his former spouse. A.B. is the only party who appeared in the district court to

defend against Nationwide's action. The district court dismissed Nationwide's duty-to-indemnify claim for lack of subject-matter jurisdiction because it was not ripe.

Nationwide moved for summary judgment on the remaining duty-to-defend claim. The district court granted a summary judgment for Nationwide against A.B. and a default judgment against David Barrow and his former spouse. A.B. filed a motion to alter or amend the judgment. *See* FED. R. CIV. P. 59(e). The district court denied A.B.'s Rule 59 motion.

## II. STANDARD OF REVIEW

"We review *de novo* questions of our jurisdiction." *United States v. Amodeo*, 916 F.3d 967, 970 (11th Cir. 2019).

## III. DISCUSSION

In every appeal, the "first and fundamental question is that of jurisdiction, *first*, of this court, and *then* of the court from which the record comes." *Id.* at 970 (internal quotation marks omitted). If jurisdiction might be lacking, we are obliged to *sua sponte* assure ourselves of our own jurisdiction. *See Cadet v. Bulger*, 377 F.3d 1173, 1179 (11th Cir. 2004). If we lack jurisdiction, our only remaining function is to announce that we lack jurisdiction and dismiss the cause. *Amodeo*, 916 F.3d at 971.

"To have a case or controversy, a litigant must establish that he has standing, which must exist throughout all stages of litigation." *Id.* (internal quotation marks omitted). To establish standing, a litigant must have "suffered a concrete and particularized injury

that is fairly traceable to the challenged conduct . . . and is likely to be redressed by a favorable judicial decision." *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013). "The standing Article III requires must be met by persons seeking appellate review, just as it must be met by persons appearing in courts of first instance." *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 64 (1997).

"Only a litigant who is aggrieved by the judgment or order" has appellate standing. *Wolff v. Cash 4 Titles*, 351 F.3d 1348, 1354 (11th Cir. 2003) (internal quotation marks omitted). "[I]t is not enough" that the party appealing the judgment has "a keen interest in" the judgment. *See Hollingsworth*, 570 U.S. at 700. The party appealing "must seek relief for an injury that affects him in a personal and individual way." *Id.* at 705 (internal quotation marks omitted). If the judgment of the district court does not injure the party appealing that judgment, then the party does not have appellate standing. *See Amodeo*, 916 F.3d at 971; 15A CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3902 (2d ed. April 2021 update) (explaining that "standing to appeal" requires an "injury caused by the judgment rather than injury caused by the underlying facts").

The Supreme Court has held that there can be "an actual controversy" in an action for declaratory judgment between an insurance provider and an individual injured by an insured. *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 274 (1941). It reversed the dismissal of an injured individual from an action for a declaratory judgment brought by an insurer against its insured on the

ground that there was no controversy between the injured individual and the insurer. *Id.* at 271–72. The Supreme Court held that there was a controversy between the injured individual and the insurance company because the action would determine whether the insurer "was . . . obligated under the policy" to provide coverage, including a duty to defend and indemnify, to the insured. *See id.* at 274, 272–73.

For similar reasons, our predecessor Court, in *Dairyland Insurance Co. v Makover*, held that an injured tort claimant has standing to appeal a declaratory judgment that an insurance policy provided no *coverage* for the incident that injured the tort claimant. 654 F.2d 1120, 1122 (5th Cir. Unit B 1981); *see also Standard Accident Ins. Co. v. Meadows*, 125 F.2d 422–23 (5th Cir. 1942) (holding that a district court improperly dismissed a tort claimant in a declaratory-judgment action brought by an insurer against the insured and the tort claimant seeking a declaratory judgment that the relevant incident was not "within the coverage of its policy"). The Fifth Circuit explained that the tort claimant had standing as a "potential judgment creditor[] claiming liability in a state court tort suit against the putative insured" to appeal a decision that held that he could not seek satisfaction from the insurer because the insurer had no obligations under the insurance policy. *Dairyland Ins.*, 654 F.2d at 1123. That kind of judgment injures the tort claimant in "a concrete and particularized . . . [way] that is fairly traceable to the challenged [judgment] . . . and is likely to be redressed by a

favorable judicial decision" on appeal. *See Hollingsworth*, 570 U.S. at 704; *Cash 4 Titles*, 351 F.3d at 1354.

This appeal presents a different question: whether a declaratory judgment that an insurer has no duty to defend an insured injures a tort claimant so as to confer Article III standing to appeal. *Maryland Casualty* and *Dairyland Insurance* both involved actions that had a direct bearing on whether the tort claimant could recover from the insurer because they addressed whether the insurer had any duty to *indemnify* the insured. *See Maryland Cas.*, 312 U.S. at 273–74; *Dairyland Ins.*, 654 F.2d at 1123. Those decisions did not address whether a declaratory judgment that the insurer has no duty to *defend* injures a tort claimant like A.B.

Only two of our sister circuits have addressed the question presented in a precedential decision, and both circuits held that a tort claimant lacks standing to challenge a declaratory judgment that an insurer has no duty to defend its insured. First, the Seventh Circuit held that a party in the same posture as A.B. had no standing to appeal a declaratory judgment that the insurer had no duty to defend the insured. *Grinnell Mut. Reinsurance Co. v. Reinke*, 43 F.3d 1152, 1153–54 (7th Cir. 1995). The Seventh Circuit explained that the victim of a tort is "helped rather than harmed" by a judgment declaring that an insurer is not required to defend the victim's adversary. *Id.* at 1154. And it held that "[b]ecause the victims are not entitled to contest the district court's conclusion that [the insurer] need not defend the [insured] in the tort litigation, nothing remain[ed] of th[e] appeal." *Id.* Second, the Sixth Circuit held that

a county lacked standing to assert that an insurer had a duty to defend an insured county police officer in a tort action brought by a tort claimant. *Allstate Ins. Co. v. Wayne Cnty.*, 760 F.2d 689, 695 (6th Cir. 1985). The county was differently situated from A.B. because it was a defendant in the underlying tort action, but our sister circuit's reasoning applies with equal force here. The Sixth Circuit explained that, because "the duty to defend is a right affecting *only* the obligations of the insurer vis-a-vis the insured," other parties do not have standing to enforce that right on behalf of the insured. *Id.* (emphasis added).

A.B. is not injured by the declaratory judgment. After dismissing Nationwide's duty-to-indemnify claim as unripe, the district court declared that Nationwide owes no duty to defend Barrow in A.B.'s state court action. The result of that declaratory judgment is that Nationwide is not required to defend Barrow in that action. And a "declaratory judgment relieving [Nationwide] of any obligation to defend [Barrow] help[s] rather than harm[s] [A.B.]" because "[A.B.] want[s] a weak defense" in her state court action, "not a strong one." *See Reinke*, 43 F.3d at 1153–54.

A.B. is also not injured by any preclusive effect of the declaratory judgment. If A.B. cannot obtain review of the declaratory judgment, it lacks preclusive effect on her. Restatement (Second) of Judgments § 28 (1982) ("[R]elitigation of [an] issue in a subsequent action between the parties is not precluded" when "[t]he party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action.");

*see also id.* § 28 cmt. a ("[T]he availability of review for the correction of errors [is] critical to the application of preclusion doctrine."). As the Supreme Court of Alabama has explained, a litigant is not precluded by the doctrine of res judicata or collateral estoppel when the litigant is unable to "assert its claims" or fully seek "a certain remedy or form of relief" because of "the limitations on the . . . jurisdiction of the courts." *See Lloyd Noland Found., Inc. v. HealthSouth Corp.*, 979 So. 2d 784, 795–96 (Ala. 2007) (holding that a litigant was not barred by the doctrine of collateral estoppel or res judicata from bringing an action in state court because the federal court that issued the prior judgment on related issues would have lacked jurisdiction to determine the issue in the state court action) (citing Restatement (Second) of Judgments §§ 26, 28). So, A.B. can assert that notice was sufficient in the underlying state court action with the evidence submitted in her Rule 59(e) motion. *Cf. Reinke*, 43 F.3d at 1153–54; *Ladner & Co. v. S. Guar. Ins. Co.*, 347 So. 2d 100, 103–04 (Ala. 1977) ("[I]t cannot be determined at the [duty-to-defend] stage" whether the insurance company "is obligated to pay any judgment.").

A.B. lacks appellate standing. A.B suffered no injury from the judgment in favor of Nationwide. *Reinke*, 43 F.3d at 1154 (explaining that a litigant "who cannot show how the judgment injured [him] in a way the court of appeals can correct, [is] not [a] proper appellant[]"). "Because [A.B.] lacks standing, we must dismiss this appeal." *Amodeo*, 916 F.3d at 973 (internal quotation marks omitted).

10                    Opinion of the Court                    21-11221

## IV. CONCLUSION

We **DISMISS** this appeal for lack of jurisdiction.

21-11221                    JORDAN, J., Concurring                              1

JORDAN, Circuit Judge, concurring *dubitante*:

Decades ago, the legal philosopher Lon Fuller explained that a judge concurs *dubitante* when he is uncomfortable or unhappy with something in the majority opinion but is not confident enough to dissent from the result.  *See* Lon L. Fuller, Anatomy of the Law 147 (1968).  That description accurately describes my situation here.

Relying on the decisions of the Sixth and Seventh Circuits in *Allstate Ins. Co. v. Wayne County*, 760 F.2d 689, 695 (6th Cir. 1985), and *Grinnell Mutual Reinsurance Co. v. Reinke*, 43 F.3d 1152, 1154 (7th Cir. 1995), the majority holds that A.B.—the tort claimant—lacks Article III standing to appeal a declaratory judgment that Nationwide has no duty to defend its insured, David Barrow—the alleged tortfeasor.  On one level, *Wayne County* and *Reinke* make sense. If standing to appeal requires an "injury caused by the judgment rather than injury caused by the underlying facts," 15A Wright & Miller, Federal Practice & Procedure § 3902 (2d ed. & April 2021 update), it is not obvious that a tort claimant is injured or aggrieved by a judgment declaring that the alleged tortfeasor is not owed a defense by his insurer.  Whether or not the alleged tortfeasor has a defense provided by the insurer, the tort claimant will be able to press her claim and, if successful, obtain a money judgment against him.  *See, e.g., Wayne County*, 760 F.2d at 695 ("Wayne County can demonstrate no threatened injury resulting from Allstate's failure to defend Russo.").

2                    JORDAN, J., Concurring                    21-11221

There are, however, some cracks in the edifice. The Supreme Court held long ago that there is an actual case or controversy between an insurer and a tort claimant. *See Maryland Casualty Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 274 (1941). And the former Fifth Circuit has similarly concluded that "whether an insurer is bound [under] an automobile insurance policy by a judgment against its insured . . . presents a controversy for declaratory judgment as between it, its insured and the plaintiff in a damage suit against its insured." *Standard Acc. Ins. Co. v. Meadows*, 125 F.2d 422, 424 (5th Cir. 1942) (holding that it was plain error for the district court to have dismissed the tort claimants from the declaratory judgment action filed by the insurer, which alleged that it "was not obligated to defend the state court [tort] action or to pay and satisfy any judgment which [the claimants] might recover"). In such cases, it can be said that the "concept of standing is . . . subsumed in the case-or-controversy analysis." *Fed. Kemper Ins. Co. v. Rauscher*, 807 F.2d 345, 351 (3d Cir. 1986).

The Seventh Circuit has remarked that "[i]t would be anomalous to hold . . . that an actual controversy exists between [the tort claimant] and [the insurer] and yet deny [that claimant] the right to participate in the controversy." *Hawkeye-Sec. Ins. Co. v. Schulte*, 302 F.2d 174, 177 (7th Cir. 1962). That observation seems particularly apt when the insurer chooses to bring the tort claimant into the case by naming her as a defendant in its declaratory judgment action. *See, e.g., Meadows*, 125 F.2d at 423–24. *Accord Auto. Underwriters Corp. v. Graves*, 489 F.2d 625, 627–28 (8th Cir. 1973)

21-11221                    JORDAN, J., Concurring                    3

("An injured person having a possible claim against an insurer who has been made a party defendant to an action for declaratory judgment possesses the requisite interest to be heard on appeal notwithstanding that the court in entering a judgment on the merits dismisses the action against all parties other than the policyholder.").

In *Dairyland Insurance Co. v. Makover*, 654 F.2d 1120 (5th Cir. Unit B 1981), the insurer, following a car accident, sought a declaratory judgment that the driver of the vehicle which caused the accident was not covered by the terms of its policy. *See id.* at 1122. The declaratory judgment action was filed while the underlying tort suit was pending. The defendants to the declaratory judgment action were the insured, the driver of the vehicle, and the tort claimants who had filed the suit against the insured seeking recovery for their personal injuries. *See id.* After the district court entered a declaratory judgment in favor of the insurer, the tort claimants appealed. *Id.* at 1122–23.

The insurer argued that the tort claimants lacked standing to appeal "because they were merely nominal defendants in th[e] declaratory judgment action." *Id.* at 1123. More particularly, it asserted that the tort claimants were "merely potential or contingent judgment creditors" and that "the availability of insurance proceeds to satisfy a potential judgment [was] only a remote and secondary consequence of th[at] litigation." *Id.* The Fifth Circuit rejected the insurer's argument and held that "the [tort claimants], as potential judgment creditors claiming liability in a state court tort suit against the putative insured, have standing to appeal the

judicial declaration that the policy of insurance issued by [the insurer] does not cover the putative insured." *Id.* It was "decisive" to the Fifth Circuit's holding "that [the insurer] named the [tort claimants] as defendants in its declaratory judgment action." *Id.*

The majority distinguishes cases like *Maryland Casualty*, *Meadows*, and *Dairyland Insurance* on the ground that they involved the duty to indemnify rather than—as here—the duty to defend. That distinction likely works, but "standing is not dispensed in gross," *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017) (internal quotation marks and citation omitted), and at least *Meadows*, 125 F.2d at 424, involved both the duty to defend and the duty to indemnify. If the tort claimant in *Meadows* needed standing to appeal for each claim, there is an argument that the Fifth Circuit's standing ruling encompassed the duty to defend as well as the duty to indemnify. *Cf. Looney Ricks Kiss Architects, Inc. v. State Farm Fire & Cas. Co.*, 677 F.3d 250, 257 n.5 (5th Cir. 2012) (stating, in dicta, that based on *Dairyland Insurance* a tort claimant had standing to "seek a declaration that [the insurer] owes a duty to defend its insureds").

Both the duty to defend and the duty to indemnify present a question of coverage. *See generally* 14 Couch on Insurance §§ 200:12, 201:16 (3d ed. 2021). The difference is that the duty to defend is determined by the allegations made by a tort claimant in her complaint, while the duty to indemnify is determined by the facts the tort claimant is ultimately able to prove. *See id.* at § 200:20. So if the tort claimant proves the exact allegations in her

21-11221                JORDAN, J., Concurring                5

complaint—a circumstance which I assume is not unusual—the determination concerning the duty to indemnify will necessarily be the same as the determination concerning the duty to defend.

When viewed from this perspective, one can see how a tort claimant will be adversely affected by a judgment which declares that there is no duty to defend because the facts she alleged do not come within the scope of coverage. It may be, as the majority says, that a tort claimant who is not able to appeal an adverse ruling on the duty to defend will not be legally bound by that ruling. On the ground, however, the reality can be starkly different.

Assume that the tort claimant is able to prevail against the insured (the alleged tortfeasor) by proving the exact facts alleged in her complaint. She will then presumably go after the insurer to collect her judgment from the insurance proceeds. That second case will likely be filed in the same district court that entertained the insurer's initial declaratory judgment action, and, if so, will likely be transferred as a related case to the same judge who presided over the first action. The tort claimant, then, will be asking that judge to change her mind and rule that there is coverage based on the facts proved at trial, which are the same as those alleged in the complaint. The insurer, on the other hand, will tell the judge that she got it right the first time and that nothing has changed. Res judicata and collateral estoppel may not apply, but the ruling in the first declaratory judgment action will hang over the second suit like a "brooding omnipresence." *S. Pac. Co. v. Jensen*, 244 U.S. 205, 222 (1917) (Holmes, J., dissenting). Just ask any experienced

6                    Jordan, J., Concurring                    21-11221

attorney how difficult it is to get a judge to reconsider a prior rul-
ing, even if it is susceptible to criticism.

I have my doubts about the result in this case, but they are
not strong enough to advocate that we create a circuit split by de-
viating from *Wayne County* and *Reinke*.  I therefore concur in the
judgment.