[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-11923

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

LUIS SANCHEZ,
JAQUELINE YUPANQUI PALACIOS,
EXCENTRIC IMPORT & EXPORT CORPORATION,

Petitioners-Appellants,

CARLOS QUISPE CANCARI,

Defendant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:21-cr-20134-CMA-1

_____

Before WILSON, LUCK, and ANDERSON, Circuit Judges.

PER CURIAM:

This case is about third parties who claim an interest in property subject to criminal forfeiture. Luis Sanchez, Excentric Import and Export Corporation, and Jaqueline Yupanqui Palacios appeal the preliminary and final orders of forfeiture in Carlos Quispe Cancari's criminal case, as well as the district court's orders dismissing their third-party petition and refusing to grant relief from that dismissal.

Their appeal falls short. We dismiss the petitioners' challenge to the preliminary forfeiture order for lack of jurisdiction and affirm the district court's other orders.

## I.[1]

Cancari was arrested at the Miami airport when he arrived on a cargo plane from Bolivia on February 4, 2021. Law enforcement seized narcotics and $9,000 in cash during his arrest. Cancari told the officers that the money belonged to Mr. Sanchez. Cancari was later charged with drug offenses, and his indictment included forfeiture allegations pursuant to 21 U.S.C. section 853. Cancari pleaded guilty, admitting that the "$9,000 in United States currency" that the government had seized was "subject to forfeiture."

The district court entered a preliminary order of forfeiture. The order stated that it was "final" as to Cancari and that, "upon adjudication of all third-party interests," the district court would enter a final order of forfeiture "in which all interests w[ould] be addressed."

The government posted notice of the pending final order of forfeiture on an official website from September 25 through October 24. The government also sent notice to Mr. Sanchez's counsel, delivered on October 29, outlining Mr. Sanchez's right to participate in the forfeiture proceedings.

On November 23, Mr. Sanchez, Excentric, and Ms. Palacios jointly petitioned the district court under 21 U.S.C. section 853(n) for release of the $9,000. They attached to the petition signed affidavits from Mr. Sanchez and Ms. Palacios. The district court

---

[1] We accept the factual allegations in the petition as true. Fed. R. Crim. P. 32.2(c)(1)(A).

denied their petition without prejudice for not including a memorandum as required by the local rules, and, in light of the government's non-opposition, granted the petitioners an extension of time to revise their petition. On December 17, the petitioners filed a revised petition (which included a memorandum), alongside the signed affidavit from Mr. Sanchez and a new signed affidavit from Ms. Palacios. However, the revised petition, like the original petition, was only signed by the petitioners' counsel—not the petitioners.

The revised petition alleged that Mr. Sanchez was a part owner of Excentric, a Florida company that sold electronics to Latin American clients including Ms. Palacios, a Bolivian resident operating a Bolivian electronics company. The petition explained that Ms. Palacios owed Excentric "for merchandise previously purchased," so she'd "sent payment of the $9,000.00 U.S. dollars to Excentric with [d]efendant Quispe Cancari who was traveling from Bolivia to Miami." The money came from "earnings and working capital from [Ms. Palacios's] electronics business," and had "no relationship" to Cancari's drug offenses. None of the petitioners had any idea Cancari was transporting narcotics.

The district court granted the government's motion to dismiss the petition because Mr. Sanchez and Excentric lacked Article III standing and the three petitioners lacked statutory standing. The district court also dismissed the petition because the petitioners hadn't signed the petition, as required by section 853(n)(3), and the attached signed affidavits that they had attached to the petition

didn't cure that mistake. The district court refused to grant the petitioners' request for leave to amend their petition because the statute authorizing third-party petitions in criminal forfeiture proceedings only allowed petitions to be filed during a thirty-day window, which had long passed by.

The district court issued a final order of forfeiture, declaring that "all right, title, and interest in the [c]urrency is hereby finally forfeited." The petitioners then filed a motion under Federal Rule of Civil Procedure 60, seeking relief from the dismissal of their petition and from the final forfeiture order. The district court denied the motion, and the petitioners timely appealed.

## II.

The petitioners appeal the preliminary order of forfeiture, the dismissal of their petition, the final order of forfeiture, and the denial of their rule 60 motion. Their appeal focuses on two issues: (1) whether the district court erred in issuing the preliminary order of forfeiture; and (2) whether the district court erred in dismissing their section 853(n) petition.[2] We discuss each in turn.

---

[2] The petitioners raise a third issue—the constitutionality of section 853—but we don't address it because it wasn't properly raised in the district court. The petitioners' only mention of this constitutional issue in the district court was in their reply brief supporting their rule 60 motion. The district court declined to address the belatedly raised issue, and so do we. *See United States v. Lewis*, 115 F.3d 1531, 1539 (11th Cir. 1997) ("This [c]ourt will generally not address an issue not decided by the district court" and "therefore do not reach the merits of the defendant's constitutional challenge." (cleaned up)).

*The Preliminary Order of Forfeiture*

The petitioners argue that the district court erred in issuing the preliminary forfeiture order because the government never established a nexus between the seized cash and Cancari's crime. The government responds that the petitioners lack Article III standing to challenge the preliminary order of forfeiture. "We review de novo questions about our subject matter jurisdiction, including standing." *United States v. Davenport*, 668 F.3d 1316, 1319 (11th Cir. 2012) (cleaned up).

We begin by summarizing the relevant legal framework. Under section 853 and "Federal Rule of Criminal Procedure 32.2, criminal forfeiture is split into two phases: the first phase concerns the defendant's ownership of the property to be forfeited, and the second phase concerns any third party's ownership of that property." *United States v. Amodeo*, 916 F.3d 967, 972 (11th Cir. 2019). When "a criminal defendant pleads guilty and agrees to the forfeiture, the district court must promptly enter a preliminary forfeiture order." *Id.* (citing Fed. R. Crim. P. 32.2(b)(1)–(2)). At that point, "the preliminary forfeiture order becomes final *as to the defendant*" but "remains preliminary as to third parties until the [section 853(n)] ancillary proceeding is concluded." *Id.* (quoting Fed. R. Crim. P. 32.2(b)(4)(A)).

"The ancillary proceeding exists to determine whether a third party has an interest in the property that the defendant has already forfeited—not to relitigate the preliminary order's finding of forfeitability." *Id.* "Nowhere do the provisions [of section 853(n)

or rule 32.2] grant petitioners a private cause of action or right to appeal a court's ruling outside of an ancillary forfeiture proceeding." *United States v. Cone*, 627 F.3d 1356, 1358 (11th Cir. 2010). In fact, "[s]ection 853 affirmatively bars interference by non-party petitioners outside of the ancillary proceeding." *Id.* (citing 21 U.S.C. § 853(k)). Because "[a]n ancillary proceeding constitutes the sole means by which a third-party claimant can establish entitlement to return of forfeited property," third-party claimants "lack[] standing to challenge the validity of [a preliminary order of forfeiture's] determination of forfeitability," and so we must dismiss third-party challenges to preliminary orders of forfeiture for lack of jurisdiction. *See Davenport*, 668 F.3d at 1320–21; *see also, e.g.*, *Cone*, 627 F.3d at 1359 (dismissing appeal because third-party petitioner lacked standing to challenge district court's preliminary order of forfeiture).

That's what we must do here. Because the petitioners' sole means to establish their entitlement to the $9,000 is the ancillary proceeding, they lack standing to challenge the preliminary forfeiture order. We dismiss their appeal of the preliminary order of forfeiture for lack of jurisdiction.

*The District Court's Dismissal of the Petition*

Rule 32.2 allows district courts to grant motions to dismiss section 853(n) petitions "for lack of standing, for failure to state a claim, or for any other lawful reason." Fed. R. Crim. P. 32.2(c)(1)(A). When a rule 32.2 "motion to dismiss is filed before discovery or a hearing, it should be treated like a motion to dismiss

a civil complaint under Federal Rule of Civil Procedure 12(b)." *United States v. Marion*, 562 F.3d 1330, 1342 (11th Cir. 2009) (quotation omitted).

The petitioners contend that the district court erred in dismissing their petition by wrongly: (1) finding that Mr. Sanchez and Excentric lacked Article III standing to file the petition; (2) finding that the petitioners lacked statutory standing under section 853(n); and (3) denying them leave to file an amended petition, which would've added their signatures. We address these arguments one by one, reviewing the district court's Article III and statutory standing rulings de novo, *see Davenport*, 668 F.3d at 1319, and denial of leave to amend for abuse of discretion, *United States v. $125,938.62*, 370 F.3d 1325, 1329 (11th Cir. 2004).

## 1. Article III Standing

The petitioners argue that the district court erred in finding that Mr. Sanchez and Excentric lacked Article III standing to petition for the $9,000. Claimants in federal court must have Article III standing, a requirement deriving from the constitutional mandate that federal courts' jurisdiction is limited to adjudicating "[c]ases" and "[c]ontroversies." U.S. Const. art. III, § 2. The first element of Article III standing is a "particularized injury," which in forfeiture proceedings hinges on "whether the litigant has an interest in the property subject to the forfeiture." *See Amodeo*, 916 F.3d at 971

("[A]bsent an interest in that property, there is no case or controversy.").

The interest must be either "an ownership or possessory interest in the property seized." *United States v. Five Hundred Thousand Dollars*, 730 F.2d 1437, 1439 (11th Cir. 1984); *see also United States v. Timley*, 507 F.3d 1125, 1129 (8th Cir. 2007). Because the interest must be in the *specific property* seized, a criminal defendant's *general creditors* don't have standing to claim an interest in any particular asset subject to forfeiture. *See United States v. Watkins*, 320 F.3d 1279, 1283 (11th Cir. 2003) (explaining that because general creditors only "enjoy a legal interest in the entire estate of the debtor," they aren't entitled to repayment from the value of "any one specific asset" belonging to the debtor); *see also United States v. White*, 675 F.3d 1073, 1080 (8th Cir. 2012) ("[A] general creditor does not have standing to claim an interest in a particular forfeited asset.").

The petition doesn't allege that Mr. Sanchez or Excentric had either an ownership interest or a possessory interest in the seized cash. Rather, the petition (and incorporated memorandum) alleged that Ms. Palacios was the "[o]wner/[b]ailor" of the cash—which Cancari "possessed" as Ms. Palacios's "bailee"—while Mr. Sanchez and Excentric were merely Ms. Palacios's general "creditors." So, although the petition does allege that Ms. Palacios owes Mr. Sanchez and Excentric money because they're her "creditors," the petition doesn't allege that Mr. Sanchez and Excentric have a legal interest in Ms. Palacios repaying them from *the specific cash* she had placed in Cancari's possession. *See Watkins*, 320 F.3d at 1283

("[G]eneral creditors cannot point to any one specific asset and claim that they are entitled to payment out of the value of that specific asset.").

Because the petition doesn't allege that Mr. Sanchez and Excentric had an ownership or possessory interest in the seized currency—and instead only alleges that they're Ms. Palacios's general creditors—they haven't alleged facts sufficient to show Article III standing. And because Mr. Sanchez and Excentric lacked Article III standing, we needn't examine whether they had statutory standing and should've been granted leave to add their signatures to the petition. We address these arguments only as to Ms. Palacios, who the district court found (and the government doesn't dispute) has Article III standing.

### 2. Statutory Standing

Ms. Palacios argues that the district court erred in finding that she lacked statutory standing. Statutory standing differs from Article III standing in that it doesn't ask whether there's a redressable injury, but whether a party "has a cause of action under the statute." *See Lexmark Int'l v. Static Control Components, Inc.*, 572 U.S. 118, 128 & 128 n.4 (2014). The statute here, 21 U.S.C. section 853(n), provides that "[a]ny person, other than the defendant, asserting a *legal interest in property which has been ordered forfeited* . . . [may] petition the court for a hearing to adjudicate the validity of his alleged interest." 21 U.S.C. § 853(n)(2) (emphasis added).

Ms. Palacios has alleged a "legal interest" in the $9,000 that's "been ordered forfeited," *id.*, which is all that is needed to establish

statutory standing at the pleading stage, *see Lexmark*, 572 U.S. at 140 (showing that statutory standing at the motion-to-dismiss stage is established through allegations—not evidence).  The petition and incorporated memorandum alleged that Ms. Palacios had a legal interest in the money as the "[o]wner/[b]ailor", and the allegations showed that there were two jurisdictions under which her legal interest was created or otherwise protected:  Bolivia and Florida.  The petition identified Ms. Palacios as a Bolivian resident, operating a Bolivian company, and alleged that she gave $9,000 of "earnings and working capital" from her company to Cancari, "who was traveling from Bolivia to Miami."  Cancari was supposed to deliver the cash to Mr. Sanchez (a Florida resident) and Excentric (a Florida corporation), but the government seized the funds when Cancari landed in Florida.

The district court faulted Ms. Palacios for not specifically citing which jurisdictions—and which laws from those jurisdictions—created her property rights.  But, whatever law applied, Ms. Palacios did not have to allege in the petition the legal basis for her interest in the money.  *See Glynn Env't Coal., Inc. v. Sea Island Acquisition, LLC*, 26 F.4th 1235, 1240 (11th Cir. 2022) ("Only factual allegations, and not legal conclusions, are relevant" at the motion-to-dismiss stage.); *PBT Real Est., LLC v. Town of Palm Beach*, 988 F.3d 1274, 1286 (11th Cir. 2021) (explaining that, because motions to dismiss concern "*factual* allegations," courts must deny a motion to dismiss that argues the claimant pleaded an "imperfect statement of the legal theory supporting the claim" (citation omitted)).  It was

enough, at the pleading stage, that she alleged she had an interest in the money as an owner or bailor.

### 3. Failure to Sign Petition and Leave to Amend

Although Ms. Palacios had standing to sue under section 853(n), she didn't comply with an unambiguous pleading requirement laid out by the statute: the requirement that she sign the petition. 18 U.S.C. § 853(n)(3) (requiring petitions "be signed by the petitioner under penalty of perjury"). Ms. Palacios admits that she didn't comply with the plain text of this pleading requirement because she never signed the petition—only her lawyer did.

Even so, she argues, the district court erred in denying her motion to amend the petition to add her signature. The district court refused to do so because the statutory window for filing third-party petitions had closed.

Section 853(n) provides that a third party "asserting a legal interest in property which has been ordered forfeited" must file their petition within "*thirty days* of the final publication of notice or his receipt of notice . . . , whichever is earlier." 18 U.S.C. § 853(n)(2). We've described this window as establishing a "*mandatory* 30–day period for filing third-party petitions." *Davenport*, 668 F.3d at 1323 (emphasis added).

By the time Ms. Palacios sought leave to add her signature to the petition the mandatory thirty-day deadline had long since passed. Given the language of the statute and our case law, we cannot say that the district court abused its discretion when it enforced this congressionally prescribed, "mandatory" thirty-day window

and denied leave to amend.  *See id.; see also United States v. Snipes*, 611 F.3d 855, 864 (11th Cir. 2010) (stressing that the Supreme Court has "strictly construed" clear statutory filing periods as "absolute" deadlines).

## III.

The petitioners' appeal of the preliminary order of forfeiture is **DISMISSED** for lack of jurisdiction.  The other orders on appeal are **AFFIRMED**.